2010 ND 175

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST James G. WOLFF, a Member of the Bar of the State of North Dakota.**

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner**

v.

**James G. Wolff, Respondent.**

**Nos. 20100212, 20100213, 20100214.**

Supreme Court of North Dakota.

Sept. 20, 2010.

See also, 767 N.W.2d 170.

SUSPENSION AND DISBARMENT
ORDERED.

PER CURIAM.

[¶ 1]  James G. Wolff was admitted to practice law in the state of North Dakota on January 13, 2004.  On June 24, 2009, Wolff was placed on interim suspension under N.D.R. Lawyer Discipl. 4.1, Criminal Conduct, N.D.R. Prof. Conduct 1.2(d), which provides that a lawyer shall not counsel a client to engage, or assist a client, in conduct that a lawyer knows is criminal, and N.D.R. Lawyer Discipl. 3.4(B), Threat of Public Harm, based on Wolff being charged with Criminal Conspiracy–Unlawful Possession of a Controlled Substance (Cocaine).  *See Disciplinary Board v. Wolff,* 2009 ND 111, 767 N.W.2d 170.

[¶ 2] On June 7, 2010, the Supreme Court continued Wolff's interim suspension under N.D.R. Lawyer Discipl. 4.1(C) and (D), Definition of "Serious Crime" and Immediate Suspension, based on Wolff's conviction for issuing a bank check with insufficient funds, a class C felony. *See Disciplinary Board v. Wolff*, 2010 ND 96. Both the initial interim suspension and the continuation of the interim suspension were imposed until final disposition of the disciplinary proceedings predicated upon the criminal complaints and conviction.

[¶ 3] Two formal disciplinary proceedings, File No. 4677–W–0711 and File No. 4736–W–0803, were pending at the time of Wolff's interim suspension in 2009. The Supreme Court has before it Findings of Fact, Conclusions of Law, and Recommendations from a Hearing Panel of the Disciplinary Board regarding three complaint files against Wolff.

### File No. 4677–W–0711

[¶ 4] On May 1, 2008, Wolff admitted service of a Summons and Petition for Discipline. The Petition asserts that in 2006 and 2007 Wolff billed hours to the files of four clients, who were represented by another attorney in his firm, for work that was not actually done or was of no value to the clients. When confronted with the suspicion of improperly billing clients, Wolff either refunded the money to the client or intended to credit the payment for the entries on a final bill.

[¶ 5] The Petition alleges that Wolff's conduct in this matter violates N.D.R. Prof. Conduct 1.5(a), Fees, which provides a lawyer shall not make an agreement for, charge, or collect an unreasonable fee; N.D.R. Prof. Conduct 1.15(a) and (c), Safekeeping Property and Professional Liability Insurance Disclosure, which provide a lawyer shall hold property of clients and third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property, and a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred; N.D.R. Prof. Conduct 3.3(a), Candor Toward the Tribunal, which provides a lawyer shall not knowingly make a false statement of fact to a tribunal; N.D.R. Prof. Conduct 8.4(b) and (c), Misconduct, which provide it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects or engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer's fitness as a lawyer; N.D.R. Lawyer Discipl. 1.2(A)(2) and (3), which provide a lawyer may be disciplined for committing a criminal act that reflects adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer or engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; N.D.C.C. § 12.1–23–02(2), Theft of property by deception, which provides a person is guilty of theft if he knowingly obtains the property of another by deception with intent to deprive the owner thereof, or intentionally deprives another of his property by deception; and N.D.C.C. § 27–14–02(1) and (7), Causes for suspension or revocation of certificate of admission to the bar, which provide the certificate of admission to the bar of this state of an attorney and counselor at law may be revoked or suspended by the Supreme Court if that attorney has committed an offense determined by the Supreme Court to have a direct bearing upon a person's ability to serve the public as an attorney and counselor at law, or committed any other act which tends to bring reproach upon the legal profession.

[¶ 6] A Hearing Panel was appointed and the matter was scheduled for a hearing. Following the hearing, the Hearing Panel found that Wolff had billed one client for 9 hours and another for 16.39 hours at a rate of $150 per hour. The Hearing Panel found that the billed work was of no value, and when Wolff was confronted by the other attorney in the firm, Wolff refunded the money he had improperly billed to these clients. The Hearing Panel further found that Wolff had billed work that was of no value for two clients represented by the other attorney, who had been appointed by the U.S. District Court for the District of North Dakota. When confronted regarding bills paid by the Administrative Office of U.S. Courts, which included $5,400.40 for the work Wolff had billed, Wolff indicated he would credit the payment for the entries on a final bill to the government. The Hearing Panel found that while Wolff said he would credit the payment for the entries on a final bill to the government he has not done so; however Wolff continued to work on the two files after the other attorney left the firm and there is a net balance owed to the firm.

[¶ 7] The Hearing Panel concluded that Wolff's conduct violated N.D.R. Prof. Conduct 1.5(a), Fees, which provides a lawyer shall not make an agreement for, charge, or collect an unreasonable fee; and N.D.R. Prof. Conduct 1.15(a) and (c), Safekeeping Property and Professional Liability Insurance Disclosure, which provide a lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property, and a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

[¶ 8] In recommending a sanction, the Hearing Panel considered N.D. Stds. Imposing Lawyer Sanctions 4.12 which provides suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client, and N.D. Stds. Imposing Lawyer Sanctions 5.12 which provides suspension is generally appropriate when a lawyer knowingly engages in conduct which does not contain the elements listed in Standard 5.11 but that seriously adversely reflects on the lawyer's fitness to practice. The Hearing Panel also considered N.D. Stds. Imposing Lawyer Sanctions 9.22(b), dishonest or selfish motive, and (i) substantial experience in the practice of law, as adding to the aggravation of the appropriate discipline; and N.D. Stds. Imposing Lawyer Sanctions 9.32(c) which provides that personal or emotional problems may be a mitigating factor in discipline.

*File No. 4736–W–0803*

[¶ 9] On August 7, 2008, Wolff admitted service of another Summons and Petition for Discipline. On March 11, 2009, an Amended Petition and Summons were served on Wolff. Wolff served a Response to the Amended Petition for Discipline on March 25, 2009. The Amended Petition asserts that Wolff undertook the representation of a client regarding the death of her daughter. In connection with this representation, Wolff entered into a fee agreement with the client that provided that Wolff would receive one-third of any recovery as an attorney fee, with the attorney fee calculated prior to the deduction of costs which were to be born by the client, and also provided that in the event there was a dispute between the attorney and client of any type involving the engagement, it would be resolved solely by arbitration, or by applicable rules of the State Bar Association for resolution of fee

disputes if applicable. The fee agreement also provided that the prevailing party in any such disputes would be entitled to attorney's fees and costs incurred in the resolution of the dispute. The Amended Petition alleges Wolff did not discuss the dispute clause in the agreement with his client.

[¶ 10] According to the Amended Petition for Discipline, the lawsuit was settled and Wolff deposited $10,000 in his trust account, and informed the client that an accounting of the recovery left nothing for her after the deduction of the attorney's fee and the costs. The Amended Petition further alleges that during the investigation of the complaint Wolff told the Inquiry Committee West that he had provided his client with copies of statements and a trust ledger and discussed them with her, and that he had not done so. Additionally, the Amended Petition alleges Disciplinary Counsel had requested copies of billings and other documents which reflect the charges and payment of certain expenses in connection with the representation of the client, and the information was not provided.

[¶ 11] The Amended Petition alleges that Wolff's conduct in this matter violates N.D.R. Prof. Conduct 1.8(h), Conflict of Interest: Prohibited Transactions, which provides a lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; N.D.R. Prof. Conduct 1.15(h), Safekeeping Property and Professional Liability Insurance Disclosure, which provides a lawyer shall maintain or cause to be maintained on a current basis records sufficient to demonstrate compliance with the provisions of this Rule; and N.D.R. Prof. Conduct 8.1, Bar Admission and Disciplinary Matters, which provides a lawyer in connection with a

disciplinary matter, shall not knowingly make a false statement of material fact or fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter.

[¶ 12] Following the appointment of a Hearing Panel and a hearing, the Hearing Panel found that in regards to the fee agreement between Wolff and his client, Wolff did not discuss the dispute clause with his client. The Panel also found that Wolff did not supply copies of documents reflecting the charge and payment of certain claimed expenses as requested, informally as well as in interrogatories, by the Disciplinary Counsel. However, the Hearing Panel found that there is not clear and convincing evidence that Wolff did not discuss his billing statements and trust ledger with his client. Finally, the Hearing Panel found that billings sent to Wolff for expenses he claimed were paid on behalf of his client have not been paid in over two years.

[¶ 13] The Hearing Panel concluded that Wolff's conduct violated N.D.R. Prof. Conduct 1.8(h), Prohibited Transactions, which provides a lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; N.D.R. Prof. Conduct 1.15(h), Safekeeping Property and Professional Liability Insurance Disclosure, which provides a lawyer shall maintain or cause to be maintained on a current basis records sufficient to demonstrate compliance with the provisions of this Rule; and N.D.R. Prof. Conduct 8.1, Bar Admission and Disciplinary Matters, which provides a lawyer in connection with a disciplinary matter, shall not knowingly make a false statement of material fact or fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter.

[¶ 14]  In recommending a sanction, the Hearing Panel considered N.D. Stds. Imposing Lawyer Sanctions 5.12 which provides suspension is generally appropriate when a lawyer knowingly engages in conduct which does not contain the elements listed in Standard 5.11 but that seriously adversely reflects on the lawyer's fitness to practice; N.D. Stds. Imposing Lawyer Sanctions 9.22(b), dishonest or selfish motive, and (i ) substantial experience in the practice of law, as adding to the aggravation of the appropriate discipline; and N.D. Stds. Imposing Lawyer Sanctions 9.32(c) which provides that personal or emotional problems may be a mitigating factor in discipline.

*File No. 4931–W–0906*

[¶ 15]  On August 11, 2009, Wolff admitted service of a Summons and Petition for Discipline.  The Petition was for the conduct which resulted in Wolff's interim suspension.  *See Disciplinary Board v. Wolff,* 2009 ND 111, 767 N.W.2d 170.  The Petition asserts that during Wolff's representation of a client in a criminal matter, he met his client at a local bar and asked the client to find cocaine for him and her so they could party.  Subsequently, the client telephoned Wolff to make arrangements for him to receive cocaine. Wolff met his client and paid her money and was subsequently arrested for Criminal Conspiracy to Unlawfully Possess a Controlled Substance Cocaine, a class C felony.  He was also arrested for driving under the influence.

[¶ 16]  The Petition for Discipline alleges that Wolff's conduct in this matter violates N.D.R. Prof. Conduct 1.2(d), Scope of Representation and Allocation of Authority Between Client and Lawyer, which provides that a lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal; N.D.R. Prof. Conduct 8.4(b), Misconduct, and N.D.R. Lawyer Discipl. 1.2(A)(2) and (11), Grounds for Discipline, which provide that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, through Wolff's violations of N.D.C.C. § 12.1–06–03, Criminal Solicitation, N.D.C.C. § 12.1–06–04, Criminal Conspiracy, N.D.C.C. § 19–03.1–12 Prohibited Acts A—Mandatory Terms of Imprisonment and Fines—Unclassified Offenses—Penalties, and N.D.C.C. § 27–14–02(1) and (7), Causes for Suspension or Revocation of Certificate of Admission to Bar.

[¶ 17]  Following the appointment of the Hearing Panel and a hearing, the Hearing Panel found that Wolff had asked his client to find cocaine for him, gave her $200 for the cocaine, and was subsequently arrested and charged.  The record reflects that on January 20, 2010, Wolff entered a guilty plea to Attempted Possession of Controlled Substance (Cocaine), which is a class A misdemeanor.  Wolff was placed on supervised probation for two years, with conditions, and was ordered to pay fines and fees.

[¶ 18]  The Hearing Panel found that Wolff's conduct violated N.D.R. Prof. Conduct 1.2(d), Scope of Representation and Allocation of Authority Between Client and a Lawyer, which provides that a lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal; N.D.R. Prof. Conduct 8.4(b), Misconduct, and N.D.R. Lawyer Discipl. 1.2(A)(2), Grounds for Discipline, which provide that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in that Wolff's conduct violates N.D.C.C. § 12.1–06–03, Criminal Solicitation, N.D.C.C. § 12.1–06–04, Criminal Conspiracy, N.D.C.C. § 19–03.1–12 Pro-

hibited Acts A—Mandatory Terms of Imprisonment and Fines—Unclassified Offenses—Penalties, and N.D.R. Lawyer Discipl. 1.2(A)(11), Grounds for Discipline, through Wolff's violation of N.D.C.C. § 27–14–02(1) and (7), Causes for Suspension or Revocation of Certificate of Admission to Bar.

[¶ 19]   In recommending a sanction, the Hearing Panel considered N.D. Stds. Imposing Lawyer Sanctions 5.11(a), which provides that disbarment is generally appropriate "when a lawyer engages in serious conduct a necessary element of which includes ... the sale, distribution or importation of controlled substances ... or an attempt or conspiracy or solicitation of another to commit any of these offenses[.]"; N.D. Stds. Imposing Lawyer Sanctions 9.22(b), dishonest or selfish motive, and (i) substantial experience in the practice of law, as adding to the aggravation of the appropriate discipline; and N.D. Stds. Imposing Lawyer Sanctions 9.32(c) which provides that personal or emotional problems may be a mitigating factor in discipline.

[¶ 20]   The Hearing Panel recommended to the Supreme Court that Wolff be suspended for one year and that he pay the costs of the disciplinary proceeding in the amount of $8,022.60 for his misconduct in File Nos. 4677–W–0711 and 4736–W–0803, and that Wolff be disbarred for his misconduct in File No. 4931–W–0906.

[¶ 21]   The Report of the Hearing Panel containing Findings of Fact, Conclusions of Law and Recommendations for all three files was served on July 7, 2010, and forwarded to the Supreme Court. Objections to the Report were due within 20 days of service of the report. No objections were received, and the matter was submitted to the Court for consideration.

[¶ 22]   ORDERED, that the Findings of Fact, Conclusions of Law and Recommendations of the Hearing Panel are accepted.

[¶ 23]   IT IS FURTHER ORDERED, that James G. Wolff is SUSPENDED from the practice of law in North Dakota for one year for his misconduct in File Nos. 4677–W–0711 and 4736–W–0803, effective October 1, 2010.

[¶ 24]   IT IS FURTHER ORDERED, that James G. Wolff is DISBARRED from the practice of law in North Dakota for his misconduct in File No. 4931–W–0906, effective October 1, 2010.

[¶ 25]   IT IS FURTHER ORDERED, that James G. Wolff pay the costs and expenses of these disciplinary proceedings in the amount of $8,022.60, payable to the Secretary of the Disciplinary Board.

[¶ 26]   IT IS FURTHER ORDERED, that any reinstatement is governed by N.D.R. Lawyer Discipl. 4.5 and cannot occur until at least five years from the effective date of this opinion.

[¶ 27] MARY MUEHLEN MARING, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

CROTHERS, Justice, specially concurring.

[¶ 28]   I concur in the disciplinary sanctions imposed by the Court and with much of what the Court has written in support of the sanctions. I write separately on two points of law arising, I believe, because disciplinary counsel is unnecessarily "stacking" allegations of rule violations and because the disciplinary board's hearing panel has not sufficiently explained the rationale behind several of its findings of fact and conclusions of law on those issues. Doing so, I recognize Wolff did not object to the hearing panel's findings of fact, conclusions of law and recommendation. Yet, I am mindful of our obligation to

correctly interpret and apply applicable law. *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."). Adhesion to our duty is especially important in lawyer disciplinary cases where we adjudicate in the first instance rather than act as an appellate tribunal.

[¶ 29] In File No. 4677–W–0711, disciplinary counsel alleged Wolff violated Rules 1.15(a) and (c) by billing and collecting money from four clients for work Wolff did not perform. Order at ¶¶ 4, 5. The Order notes, "The Petition alleges that Wolff's conduct in this matter violates ... N.D.R. Prof. Conduct 1.15(a) and (c), Safekeeping Property and Professional Liability Insurance Disclosure, which provide a lawyer shall hold property of clients and third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property, and a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Order at ¶ 5. The hearing panel's findings parrot allegations in the Petition for Discipline and culminate in a bare conclusion Rule 1.15 was violated. Order at ¶ 7. In fact, the hearing panel's "conclusions" merely repeat the legal violations alleged in paragraph VII of the Petition for Discipline.

[¶ 30] I agree these sparse findings and bare conclusions of Rule 1.15 violations were minimally sufficient where Wolff overcharged the Administrative Office of the United States Courts $1,794 on one file and $3,606.40 on another and where he agreed to credit that unearned fee on the final bills to the government. Order at ¶ 6. In those instances, the fees were received and acknowledged by Wolff to be unearned. At that point, the money in Wolff's possession should have been deposited into the client trust account as "legal fees and expenses paid in advance" and the money should not have been withdrawn until the fees were earned. N.D.R. Prof. Conduct 1.15(c).

[¶ 31] I also agree the findings and conclusions are sufficient to support imposition of discipline in the Beckedahl case where Wolff falsified billing records by adding hours and then removed funds from his firm's client trust account as earned fees. *See In re Kellogg,* 274 Kan. 281, 50 P.3d 57, 64 (2002) ("By failing to keep [client's] unearned fees in the trust account the Respondent failed to appropriately safeguard her client's property in violation of KRPC 1.15(a).").

[¶ 32] My concern relates to the remaining case involving Wolff's billing for work not performed, but where no promise existed to credit fees against future work and where no withdrawal from a trust account occurred. I am not confident that either the plain wording of the rule or a case in any jurisdiction supports imposition of discipline for this last scenario.

[¶ 33] Rule 1.15(a) requires that lawyers hold client property separate from the lawyer's property. The thought underlying this rule is that "[a] lawyer should hold property of others with the care required of a professional fiduciary." N.D.R. Prof. Conduct 1.15 cmt. 1. Technically and in hindsight, one might conclude that receiving money from over-billing is a violation of the rule in that the lawyer has possession of something he was not entitled to possess—the client's money. However, taking money as the result of excessive or fictitious billing is a direct violation

of Rule 1.5 regarding fees. See ABA Center for Professional Responsibility, Annotated Model Rules of Professional Conduct 70–71 (6th ed. 2007) ("Padding bills and billing the same work to more than one client violates Rule 1.5(a) " and "[i]t is by definition unreasonable to charge for work not done."). Imposing discipline for violations of Rule 1.5 makes good sense, and we are doing that here. Order at ¶ 7. However, it is the predictable ill fit of a square peg in a round hole to then try hammer the lawyer's possession of excessive fees into a violation of Rule 1.15(a) or (c).

[¶ 34] Rule 1.15 is designed to protect clients by requiring that lawyers not comingle client and lawyer property. I find nothing in the Rule's drafting history or commentary suggesting this rule was intended as a "pile-on" charge to a Rule 1.5 violation for collecting excessive fees unless additional conduct constituting a separate violation of Rule 1.15 exits. Nor have I found any reported case in any jurisdiction where a Rule 1.15(a) violation has been tacked onto a Rule 1.5 violation for bill padding or fictitious billing without the fees first having been deposited into a client trust account and then improperly withdrawn to pay the inflated fee. *In re Kellogg,* 50 P.3d at 64.

[¶ 35] Rule 1.15(c), N.D.R. Prof. Conduct, requires a lawyer to "deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." The hearing panel did not find, and I cannot locate anything in the record supporting a conclusion, that the fees in the Bray file were "paid in advance," that advance fees were not put in a trust account or that trust account funds were wrongfully withdrawn as the result of fraudulent billings. Rather, the lawyer accepted fictitious or excessive fees directly from the client, and

no trust account was misused. Standing alone, bill padding and fictitious billings are serious ethical violations for which serious discipline is warranted and is being meted out in this case. However, Wolff's fictitious billing in the Bray file had nothing to do with Rule 1.15. I discourage reading the Order in this case as providing reliable precedent to the contrary. I also caution against the result in this case being read for the proposition that Rule 1.15 can or should be used against a lawyer who withdraws what are thought to be legitimately earned fees from the trust account, only to later have a fee dispute with a client.

[¶ 36] In File No. 4736–W–0803, I am troubled by the hearing panel's failure to adequately explain its application of Rule 1.8(h), N.D.R. Prof. Conduct.

[¶ 37] Rule 1.8(h)(1) provides:

"(h) A lawyer shall not:

(1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement."

[¶ 38] The Amended Petition for Discipline in this case alleged at paragraph II:

"Wolff represented Lisa Anderson in regard to litigation involving the death of her daughter. The fee agreement between the two provided that Wolff would receive 1/3rd of any recovery as an attorney fee, with the attorney fee calculated prior to the deduction of costs which were to be born by Anderson. The agreement also provided that in the event there was a dispute between the attorney and client of any type involving the engagement, it would be resolved solely by arbitration, or by applicable rules of the State Bar Association for resolution of fee disputes if applicable. It also provided that the prevailing party in any such disputes would be entitled

to attorney's fees and costs incurred in the resolution of the dispute. Wolff did not discuss the dispute clause in the agreement with Anderson."

The hearing panel's finding 2 is identical to paragraph II of the Petition. Neither is helpful to the resolution of this case.

[¶ 39] The Petition concerns itself with the fee dispute clause not being disclosed or discussed with the client. Nothing in the Petition or the hearing panel's findings and conclusions bring this within the terms of Rule 1.8(h)(1) by suggesting Wolff attempted to exculpate himself from "malpractice" without discussing the clause with his client and without having her obtain independent advice. Legal malpractice is "[a]n instance of negligence or incompetence on the part of a professional." Black's Law Dictionary 978 (8th ed.1999). In North Dakota, "[p]rofessional negligence in a legal malpractice action involves establishing the existence of an attorney and client relationship, an attorney's duty to a client, an attorney's breach of that duty, and damages caused by the attorney's breach." *Minn–Kota Ag Prods., Inc. v. Carlson,* 2004 ND 145, ¶ 7, 684 N.W.2d 60.

[¶ 40] Rather than involving malpractice, the hearing panel found that Wolff attempted to limit the remedies available to the client for any fee dispute that might arise and that he failed to properly disclose that provision to his client. Fee disputes are not malpractice claims, and although several ethics advisory opinions discussed application of Rule 1.8(h) in the context of fee disputes, I can find no authority from any court directly addressing the issue or holding Rule 1.8 can be extended to fee disputes. *See, e.g.,* Okla. Adv. Op. 312, 2000 WL 33389634 (Aug. 18, 2000); Mich. Adv. Op. RI–257 (Apr. 8, 1996). Perhaps Rule 1.8(h) can be taken that far, but I am unwilling to so hold

unless we are required to reach the issue and we are assisted by briefing.

[¶ 41] Even assuming Rule 1.8(h) can be applied to fee disputes, arbitration clauses are not per se prohibited. Rather, the prohibited conduct is including an arbitration clause without first disclosing the fact to the client and ensuring the client is independently represented. N.D.R. Prof. Conduct 1.8(h)(1). *See also Watts v. Polaczyk,* 242 Mich.App. 600, 619 N.W.2d 714, 718 (2000) ("[M]erely contracting for ADR on issues of professional malpractice does not violate MRPC 1.8(h). As other ethics opinions have noted, when used appropriately such provisions in fee agreements only address the forum in which liability will be determined, not the duty of the lawyer to exercise reasonable care nor liability for breach of that duty.") (citations omitted).

[¶ 42] Here, nothing in the Petition and no findings of fact by the hearing panel indicate Wolff violated Rule 1.8(h) by requiring arbitration of any malpractice case brought against him. That is a problematic gap in view of the fee agreement found in the record—but not mentioned by either disciplinary counsel or the hearing panel—containing a clause providing, "Any and all disputes of any type, kind, or nature whatsoever involving the engagement (including, without limitation, fee disputes and disputes concerning the legal services rendered or not rendered by the firm) shall be resolved solely by arbitration."

[¶ 43] The hearing panel did make a finding of fact (again adopted verbatim from the Petition for Discipline) that Wolff had the client sign a fee agreement containing a mandatory fee arbitration clause and findings that "Wolff did not discuss the dispute clause in the agreement with Anderson." That finding, along with the broad arbitration clause found in the record but not quoted by the hearing panel,

may be enough to conclude clear and convincing evidence establishes Wolff's violation of Rule 1.8(h). However, all of the findings and conclusions address a fee dispute and not malpractice, thus falling outside the apparent scope of Rule 1.8(h) and thus calling into question whether the Rule has been properly applied.

[¶ 44] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, J., concur.