2011 ND 71

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST Steven Jay ROZAN.**

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner**

v.

**Steven Jay Rozan, Respondent.**

**No. 20110031.**

Supreme Court of North Dakota.

April 6, 2011.

DISCIPLINE ORDERED

PER CURIAM.

[¶ 1] The Supreme Court has before it Findings of Fact, Conclusions of Law, and Recommendations by the Hearing Panel of the Disciplinary Board recommending Steven Jay Rozan be disbarred from the practice of law in North Dakota, he pay costs of the disciplinary proceeding, he pay restitution to the involved client, and other sanctions for violations of the North Dakota Rules of Professional Conduct. We conclude there is clear and convincing evidence Rozan violated N.D.R. Prof. Conduct 1.1, N.D.R. Prof. Conduct 1.3, N.D.R. Prof. Conduct 1.4(a) and (b), N.D.R. Prof. Conduct 1.5(a), N.D.R. Prof. Conduct 1.5(b); N.D.R. Prof. Conduct 1.15(b); N.D.R. Prof. Conduct 1.15(c); N.D.R. Prof. Conduct 1.15(h), N.D.R. Prof. Conduct 1.16(e); N.D.R. Prof. Conduct 5.5, and N.D.R. Prof. Conduct 7.2(d). We hereby bar Rozan from acts constituting the practice of law in North Dakota (in-

cluding pro hac vice admission) until further order of this Court. We order him to pay $595 in costs of the disciplinary proceeding, and order him to repay Ervin Praus $9,000 plus any and all fees paid to Rozan during 2009 and 2010, because he failed to pay pro hac vice fees during that time. We further order Rozan to provide an accounting of fees and expenses to Praus and refund any additional amounts collected from Praus for fees that have not been earned or expenses that have not been incurred.

[¶ 2] Steven Jay Rozan was admitted to practice in Texas on December 14, 1970, but suspended effective January 1, 2010. In December 2007, Rozan was retained by Ervin Praus to represent him with regard to divorce proceedings in Stark County, North Dakota. Rozan's representation of Praus continued from December 2007 into 2010. Rozan was admitted pro hac vice in North Dakota in 2008. However, he failed to pay the annual pro hac vice fee in 2009 and 2010.

[¶ 3] Praus made a total of $39,000 in advance payments to Rozan. He wired $30,000 to Rozan and later paid an additional $4,000 to retain a psychiatrist to testify as an expert witness. Five thousand dollars of the funds were paid to another attorney for the referral. A settlement was reached in the divorce action in which Praus alleged he acquiesced to the settlement due to his confusion and poor mental state at the time. A final judgment was entered in the divorce proceeding based on the settlement. Praus appealed to the North Dakota Supreme Court.

[¶ 4] On November 29, 2009, the Clerk of the North Dakota Supreme Court notified Rozan he must pay the 2009 and 2010 pro hac vice fees before further filings would be accepted. On December 1, 2009, the Clerk of the North Dakota Supreme Court notified Rozan he was barred from making any further appearance due to his suspension from the practice of law in Texas effective January 1, 2010, and his failure to pay the North Dakota pro hac vice fees.

[¶ 5] On October 4, 2010, Rozan admitted service of a Summons and Petition for Discipline. The Petition asserts Rozan failed to adequately communicate regarding his client's medical condition and mental functioning, his wishes with respect to disposition of the marital property in the divorce, the value of the property, and the restrictions on Rozan's licensure in Texas and North Dakota. The Petition also asserts Rozan failed to provide the legal knowledge, skill, thoroughness, and preparation necessary for the representation; and, by his own admission, Rozan failed to understand the value of the property, resulting in an unequal distribution of property in a settlement agreement. Upon moving for relief from judgment due to mistake and/or inadvertence, Praus argued he acquiesced to the settlement agreement due to his confusion and poor mental state at the time. The Petition further asserts that, by his own admission, Rozan failed to understand Praus' medical condition and functioning at the time of negotiations, even though Praus had paid $4000 for a psychiatrist.

[¶ 6] Rozan failed to answer the Petition, otherwise respond, or request to be heard in mitigation. Therefore, under N.D.R. Lawyer Discipl. 3.1(E)(2) Rozan is in default and the charges contained in the Petition for Discipline are admitted.

[¶ 7] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct 1.1, regarding competence, and N.D.R. Prof. Conduct 1.3, regarding diligence, in that Rozan failed to act with reasonable diligence and failed to provide

the legal knowledge, skill, thoroughness and preparation necessary for the representation. Among other things, Rozan failed to take steps necessary to gain an understanding of the value of the marital property resulting in an unequal property distribution, with Praus' wife receiving approximately $360,000 more of the parties' marital property, and of Praus' medical condition and mental functioning at the time of the negotiations. Rozan failed to present medical evidence with respect to Praus' medical condition and mental functioning at the time of the negotiations, even though Praus had advanced $4,000 for a psychiatrist.

[¶ 8] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct 1.4(a) and (b), regarding communication, which in pertinent part provide that a lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished, make reasonable efforts to keep the client reasonably informed about the status of a matter, and explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation. Rozan failed to reasonably consult with Praus about his medical condition and mental functioning, his wishes with respect to the disposition of the parties' property in the divorce, the value of the property, and the restrictions on Rozan's licensure status in Texas and North Dakota.

[¶ 9] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct 1.5(a), regarding fees, which provides that a lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses, in that Rozan charged, collected and failed to refund unreasonable fees and costs, including $5,000 which Praus paid directly to another attorney, who referred legal work to Rozan; $4,000 which Praus

paid to Rozan for a psychiatrist, when in fact Rozan presented no evidence as to Praus' medical condition or mental functioning; and all fees which Praus paid to Rozan for work performed in 2009 and 2010 because Rozan failed to pay pro hac vice fees for those years and thus was prohibited from recovering fees relating to the unauthorized practice of law in North Dakota. *Ranta v. McCarney*, 391 N.W.2d 161, 166 (N.D.1986).

[¶ 10] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct 1.5(b), regarding fees, which provides that when a lawyer has not regularly represented a client, the basis, rate or amount of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, in that Rozan failed to adequately and accurately describe the basis, rate or amount of the fees and costs for which Praus would be responsible.

[¶ 11] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct 1.15(b), regarding safekeeping property, which provides a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive and, upon request by the client, shall promptly render a full accounting regarding such property, in that Rozan failed to refund unearned portions of Praus' $39,000 in advance fee payments and failed to provide an accounting of Praus' advance fee payments.

[¶ 12] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct Rule 1.15(c), regarding safekeeping property, which provides a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses in-

curred, in that Rozan kept fees that were not earned and expenses that were not incurred.

[¶ 13] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct Rule 1.15(h), regarding safekeeping property, which provides a lawyer shall maintain or cause to be maintained on a current basis records sufficient to demonstrate compliance with the provisions of Rule 1.15.

[¶ 14] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct Rule 1.16(e), regarding declining or terminating representation, which provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable advance notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expenses that has not been earned or incurred, in that Rozan effectively abandoned Praus after the notice of appeal was filed and failed to refund unearned advance payments of costs and fees.

[¶ 15] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct Rule 5.5, regarding unauthorized practice of law, which provides a lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal professional in that jurisdiction, in that Rozan appeared as counsel for Praus in 2009 but failed to pay the pro hac vice fee for that calendar year.

[¶ 16] The Hearing Panel concluded that Rozan's conduct violated N.D.R. Prof. Conduct Rule 7.2(d), regarding advertising, which provides a lawyer shall not give anything of value to a person for recommending the lawyer's services, in that Ro-

zan paid another attorney to refer legal work to Rozan.

[¶ 17] In recommending a sanction, the Hearing Panel considered N.D. Stds. Imposing Lawyer Sanctions 9.22(a), prior disciplinary offenses; Standard 9.22(b), dishonest or selfish motive; Standard 9.22(c), a pattern of misconduct; Standard 9.22(d), multiple offenses; Standard 9.22(g), refusal to acknowledge wrongful nature of conduct; Standard 9.22(h), vulnerability of the victim; Standard 9.22(i), substantial experience in the practice of law; and Standard 9.22(j), indifference to making restitution.

[¶ 18] The Hearing Panel considered a wide range of sanctions, and recommended disbarment under N.D. Stds. Imposing Lawyer Sanctions 4.41, 6.11 and 7.1. The Hearing Panel also recommended that Rozan pay the costs and expenses of the disciplinary proceedings; pay restitution to Praus in the form of a refund of $5,000, which Praus paid directly to another lawyer who referred legal to Rozan, of $4,000 which Praus paid to Rozan, ostensibly for a psychiatrist, when Rozan presented no evidence of Praus' medical condition or mental functioning, and all fees which Praus paid to Rozan for work performed in 2009 and 2010 because Rozan failed to pay pro hac vice fees for those years and was, therefore prohibited from recovering fees relating to the unauthorized practice of law; and provide an accounting of fees and expenses and refund any additional amounts collected from Praus for fees that have not been earned or expenses that have not been incurred.

[¶ 19] The Hearing Panel report containing Findings of Fact, Conclusions of Law and Recommendations was served on January 13, 2011, and forwarded to the Supreme Court. Objections to the Report were due within 20 days of service of the report. No objections were received, and

the matter was submitted to the Court for consideration.

■ [¶ 20] ORDERED, that the Findings of Fact and Conclusions of Law of the Hearing Panel are adopted. However, inasmuch as Rozan is not an admitted attorney in North Dakota, we decline to adopt the Hearing Panel recommendation of disbarment under N.D. Stds. Imposing Lawyer Sanctions 4.41, 6.11 and 7.1. Instead, we hereby bar Rozan from acts constituting the practice of law in North Dakota (including pro hac vice admission) until further order of this Court. The remaining recommendations of the Hearing Panel are adopted.

[¶ 21] IT IS FURTHER ORDERED, that Steven Jay Rozan pay the costs and expenses of these disciplinary proceedings in the amount of $595, payable to the Secretary of the Disciplinary Board, 600 East Boulevard Avenue, Bismarck, North Dakota, 58505–0530, within 30 days of service of this opinion.

■ [¶ 22] IT IS FURTHER ORDERED, that Steven Jay Rozan make restitution in the form of a refund of legal fees to Ervin Praus as follows:

a.   $5,000 which Praus paid directly to another lawyer who referred legal work to Rozan;

b.   $4,000 which Praus paid to Rozan, ostensibly for a psychiatrist, when in fact Rozan presented no evidence as to Ervin's medical condition or mental functioning; and

c.   Any and all fees which Praus paid to Rozan for work performed in 2009 and 2010 because Rozan failed to pay pro hac vice fees for those years and thus was prohibited from recovering fees relating to the unauthorized practice of law. *See Ranta v. McCarney*, 391 N.W.2d 161, 166 (N.D.1986). (Out-of-state lawyer not authorized to practice law in North Dakota prohibited from recovering fees relating to the practice of law in this State).

[¶ 23] IT IS FURTHER ORDERED, that Steven Jay Rozan provide an accounting of fees and expenses to Ervin Praus and refund any additional amounts collected from Praus for fees that have not been earned or expenses that have not been incurred.

[¶ 24] DALE V. SANDSTROM, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 25] I concur in the sanctions imposed by the Court and with most of the Court's decision. I write separately for many of the same reasons I wrote in *Disciplinary Board v. Wolff*:

"I write separately on two points of law arising, I believe, because disciplinary counsel is unnecessarily 'stacking' allegations of rule violations and because the disciplinary board's hearing panel has not sufficiently explained the rationale behind several of its findings of fact and conclusions of law on those issues. Doing so, I recognize Wolff did not object to the hearing panel's findings of fact, conclusions of law and recommendation. Yet, I am mindful of our obligation to correctly interpret and apply applicable law. Adhesion to our duty is especially important in lawyer disciplinary cases where we adjudicate in the first instance rather than act as an appellate tribunal."

2010 ND 175, ¶ 28, 788 N.W.2d 594 (Crothers, J., specially concurring) (internal citation omitted). Like in *Wolff*, Rozan filed no objections to the Disciplinary Board Hearing Panel's findings and conclusions.

Unlike Wolff who presented a case before the Hearing Panel, Rozan failed to respond to the Petition for Discipline and is in default. Consequently, the charges against Rozan are deemed admitted. *See* N.D.R. Lawyer Discipl. 3.1(E)(2).

[¶ 26] Here, and in *Wolff*, disciplinary counsel alleged a number of related violations related to fee agreements and trust accounts. Rozan's default resulting in deemed admissions make detailed discussion of the conflicting allegations largely unnecessary. However, two points merit comment.

[¶ 27] First, the court adopts the Hearing Panel's conclusion 5 determining Rozan's handling of his fees and the expert fees violated N.D.R. Prof. Conduct 1.15(b). *See* Majority Opinion at ¶ 11. Rule 1.15(b) provides, "A lawyer may deposit the lawyer's own funds in a client trust account only for the purpose of paying bank service charges, fees associated with credit card payments, or wire transfers related to that account, but only in an amount necessary for that purpose." Conclusion 5 tells us the Rule 1.15(b) violation is premised on the Hearing Panel's finding "Rozan failed to refund unearned portions of Ervin's $39,000 in advance fee payments and failed to provide an accounting of Ervin's advance fee payments." I cannot agree the rule and the reason cited for Rozan's violation match. This case is not about Rozan placing excessive personal funds in his trust account. Rozan is being disciplined because he put no funds into a trust account. Given that, I find no support for concluding Rule 1.15(b) was violated, and I cannot agree to impose discipline on Rozan for that violation.

[¶ 28] Second, I am concerned about the twin determinations that Rozan had no fee agreement in violation of Rule 1.5(a) and that Rozan did not properly deposit advance fees into a trust account in violation of Rule 1.15(c). *See* Majority Opinion at ¶¶ 9, 12. Absent evidence of the fee agreement, we do not know whether Rozan had unearned fees which should have been deposited into a trust account. Only Rozan's default saves this charge.

[¶ 29] Disciplinary counsel alleged violation of "Rule 1.15(c), N.D.R. Prof. Conduct, regarding safekeeping property, which provides a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred, in that Rozan kept fees that were not earned and expenses that were not incurred." Rule 1.15(c) provides, "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

[¶ 30] Rozan is properly disciplined for having no fee agreement in violation of Rule 1.5(a). Majority Opinion at ¶ 9. Here, imposition of discipline for violating Rule 1.15(c) also is justified based on Rozan's default and implicit admission he "kept fees that were not earned and expenses that were not incurred." However, absent admission, we would need adequate findings containing clear and convincing evidence that money in the lawyer's possession was "paid in advance." *Id.* Such a determination usually will require proof about the underlying fee agreement and facts about when and to what extent the fee is "earned" or "unearned." In turn, when and how much of the fee has been earned often depends on whether the underlying fee agreement was hourly billing or a flat fee. *See Richmond v. Nodland*, 501 N.W.2d 759, 762 (N.D.1993) (non-refundable retainer enforced in civil action over legal fees). *But see In re Peterson*, 348 Or. 325, 232 P.3d 940, 946 (2010) ("In the absence of a written fee agreement

that expressly designates a fee as a nonrefundable retainer earned upon receipt, funds paid from a client to a lawyer remain subject to trust account rules regarding funds held for another."). Even if the agreement calls for a flat fee, when all legal work was not completed as initially contemplated under the agreement, factual determinations must be made about whether all of the flat fee was "earned" and whether any portion of the fee must be refunded. *See* N.D.R. Prof. Conduct 1.16(e) (lawyer's duty upon termination of representation to refund "any advance payment of fee or expense that has not been earned or incurred"); *Disciplinary Board v. Karlsen*, 2008 ND 235, ¶ 9, 778 N.W.2d 522 ("The Hearing Panel found Karlsen was hired to represent [client] in an immigration matter for which he charged a non-refundable flat fee; Karlsen did not finish the work and did not refund the unearned portion of the fee."); *Disciplinary Board v. Madlom*, 2004 ND 206, ¶ 7, 688 N.W.2d 923 ("Madlom charged a 'non-refundable' $750 fee to prepare and file a Chapter 7 bankruptcy petition ... but failed to make a refund of fees when representation was terminated before the bankruptcy petition was filed in violation of N.D.R. Prof. Conduct 1.5(a)."). Due to considerations such as these, charges of Rule 1.5(a) and Rule 1.15(c) violations usually will conflict. Even when they do not conflict, findings supported by clear and convincing evidence are required to explain the relationship between the fee agreement and the basis for concluding an improper trust account transaction occurred.

[¶ 31] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, J., concur.