Heather **ROWAN**, Relator,

v.

**DREAM IT, INC.**, Respondent,

**Department of Employment and Economic Development,** Respondent.

No. A11–1135.

Court of Appeals of Minnesota.

April 2, 2012.

Heather Rowan, Frazee, MN, pro se relator.

Dream It, Inc., Detroit Lakes, MN, respondent.

Lee B. Nelson, Amy R. Lawler, Department of Employment & Economic Development, for respondent DEED.

Considered and decided by KLAPHAKE, Presiding Judge; STONEBURNER, Judge; and CLEARY, Judge.

## OPINION

CLEARY, Judge.

Relator Heather Rowan appeals the decision issued by an unemployment-law judge (ULJ) determining that she is ineligible for unemployment benefits and finding overpayment of benefits in the amount of $5,544. Rowan argues that she was given good cause to quit her job because respondent-employer Dream It, Inc. encouraged her to form her own limited liability company (LLC), without informing her of the negative consequences of giving up her employment status. We reverse.

## FACTS

Rowan was an employee of Dream It, a licensed general contractor, for more than four years, from September 2006 until November 2010. She worked primarily as a painter, handling interior and exterior painting and staining, but she also helped with various other projects. In January of 2009, Rowan was temporarily laid off and received unemployment benefits. On November 9, 2010, Rowan formed her own LLC and continued to work for Dream It as an independent contractor.

Rowan formed her LLC at the suggestion and encouragement of Jim Herman, her immediate supervisor, and with the approval of Jeff Boehm, the vice president and co-owner of Dream It, after her hours had been reduced. One advantage of forming an LLC that Rowan discussed with Dream It was a change in how her pay would be calculated. As an independent contractor, her pay would be calculated by the square footage of the areas she painted rather than by the hours she spent

working. The new payment calculation would make up for the wages she was losing due to her reduced hours.

Rowan submitted her self-supplied insurance forms to Dream It, as required by all subcontractors working for Dream It, on November 9, 2010. Dream It then wanted Rowan to sign a letter of resignation, although she would continue to come in to work each day and do the exact same work she had done previously, and Rowan complied.[1] After forming the LLC, Rowan worked on jobs for Dream It for approximately four more weeks, until the first week of December 2010. On December 9, 2010, she refused a job offered by Dream It because she thought the square footage and payment amount were improperly calculated. Subsequently, Dream It did not offer Rowan any further work, and at the time of the hearing, she had not worked for anyone else since incorporating her LLC.

Rowan applied for unemployment benefits and the Department of Employment and Economic Development (DEED) determined that she is ineligible.[2] She appealed the determination and a telephone hearing was held with the ULJ. Following the hearing, the ULJ issued a decision determining that Rowan is eligible for unemployment benefits. The ULJ stated that Rowan was an employee rather than an independent contractor because she did not hold an independent contractor exemption certificate pursuant to Minn.Stat. § 181.723, subd. 4 (2010). The ULJ found that Rowan quit her position at Dream It on December 9, 2010. The ULJ further found that Rowan quit her position for

good reason caused by Dream It under Minn.Stat. § 268.095, subd. 3(a).

The ULJ determined that Rowan quit because Dream It offered her only $180 worth of work for the week of December 9, 2010, which was a 60% reduction in her weekly earnings. In applying Minn.Stat. § 268.095, subd. 3(a), the ULJ found that Rowan's weekly earnings were directly related to her employment with Dream It; that Dream It was responsible for finding enough work for Rowan to make sufficient weekly earnings; and that the decrease in earnings was adverse to Rowan. As a result, the ULJ found that an average reasonable employee would quit in that situation, and therefore Rowan quit for good reason caused by her employer.

Dream It appealed the decision and filed a request for reconsideration. The ULJ issued a decision upon reconsideration, determining that Rowan is ineligible for unemployment benefits and finding an overpayment of benefits amounting to $5,544. The ULJ reversed the previous finding that Rowan was an employee and ruled instead that neither she nor the LLC she had formed was an employee of Dream It. In addition, the ULJ affirmed the previous finding that Rowan quit, but changed the resignation date from December 9, 2010, to November 9, 2010, the day Rowan signed her resignation letter and incorporated her LLC. The ULJ then reevaluated whether Rowan quit for good reason caused by Dream It on November 9, 2010.

Despite his previous findings, the ULJ determined on reconsideration that Rowan did not quit for good reason caused by

---

1. Rowan testified that on November 9, Paula Boehm, the president and co-owner of Dream It, informed her that she could not work for any company other than Dream It, and she did not do so. Boehm denied that such a restriction was imposed. The ULJ made no finding on this issue.

2. The original determination of ineligibility was based on the fact that Rowan's "self-employment" in the LLC was not covered by unemployment insurance.

Dream It, but "quit so that she could work under the auspices of her own LLC because she believed doing so would allow her to earn more and work less." Because the ULJ ruled that Rowan did not have good reason to quit caused by Dream It, she was deemed ineligible for unemployment benefits and was ordered to repay unemployment benefits in the amount of $5,544. This appeal follows.

## ISSUE

Did the ULJ err when he determined that Rowan had not quit her employment for good reason caused by Dream It?

## ANALYSIS

■ "This court may reverse or modify the ULJ's decision if the substantial rights of a petitioner may have been prejudiced because, among other things, the decision is affected by an error of law or is unsupported by substantial evidence in view of the entire record as submitted." *Nelson v. Levy,* 796 N.W.2d 336, 339 (Minn.App.2011). "We view the ULJ's factual findings in the light most favorable to the decision, giving deference to the credibility determinations made by the ULJ. In doing so, we will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Skarhus v. Davanni's Inc.,* 721 N.W.2d 340, 344 (Minn.App.2006) (citations omitted).

The Minnesota unemployment insurance program

> is remedial in nature and must be applied in favor of awarding unemployment benefits. Any legal conclusion that results in an applicant being ineligible for unemployment benefits must be fully supported by the facts. In determining eligibility or ineligibility for benefits, any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed.

Minn.Stat. § 268.031, subd. 2 (2010).

Rowan was an employee of Dream It from September 2006 until November 2010. She signed a letter of resignation at the request of her employer on November 9, 2010, incorporated her LLC, and continued working for Dream It doing the same work but no longer as an employee. The ULJ determined that Rowan ceased being an employee of Dream It beginning on November 9, 2010. In doing so, the ULJ relied on the holding in *Nelson,* 796 N.W.2d at 336. In that case, this court determined that "[u]nder the current statutory scheme for determining whether a construction worker is an employee or an independent contractor, we conclude that an LLC is not an employee of another entity." *Id.* at 343. The court based its reasoning on the language of Minn.Stat. § 181.723, subds. 1(d), 3 (2010), which specifies that only an individual, defined as a human being, can be considered an employee.

Consequently, Rowan cannot claim to be an employee of Dream It after November 9, 2010, because the clear language of the law as interpreted by this court in *Nelson* precludes such a claim. Rowan can be an employee of her LLC, but the LLC cannot be an employee of a general contractor like Dream It. However, that decision is not determinative as to whether Rowan had good cause to quit.

In his final decision, the ULJ stated that *Nelson* "rendered the undersigned's previous decision in this case legally incorrect, and mandated a reversal of that decision." We disagree. While *Nelson* did render the ULJ's earlier decision incorrect as to Rowan's status as an employee after forming the LLC and resulted in a change in the date of resignation from December 9, 2010, to November 9, 2010, it did not man-

date a finding that Rowan lacked good cause to quit her employment.

**Did the ULJ err when he determined that Rowan had not quit her employment for good reason caused by Dream It?**

█ Rowan argues that Dream It gave her good reason to quit her position when Herman encouraged her to form an LLC but failed to inform her of the consequences of giving up her employment status. The ULJ held that Rowan did not have good reason caused by her employer because she quit to earn more money and work fewer hours. The ULJ determined that Dream It was not responsible for this decision. We disagree.[3]

█ "Whether an employee had good cause to quit is a question of law, which we review de novo." *Johnson v. Walch & Walch, Inc.*, 696 N.W.2d 799, 800 (Minn. App.2005), *review denied* (Minn. July 19, 2005); *see also Rootes v. Wal–Mart Assocs., Inc.*, 669 N.W.2d 416, 418 (Minn.App. 2003).

Good cause is defined as:

A good reason caused by the employer for quitting is a reason:

(1) that is directly related to the employment and for which the employer is responsible:

(2) that is adverse to the worker; and

(3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment.

Minn.Stat. § 268.095, subd. 3(a). "The definition of a good reason caused by the employer for quitting employment provided by this subdivision is exclusive and no other definition applies." *Id.*, subd. 3(g) (2010). Thus, we must examine the provisions of this subdivision.

Rowan had good reason to quit caused by Dream It. The idea to have Rowan quit her employment and form an LLC originated with, and was suggested by, Dream It. Previously, when work slowed down in early 2009, Dream It had laid Rowan off and Rowan had received unemployment benefits. In November of 2010, as the work slowed down again, her supervisor, Herman, with the approval of Dream It's co-owner, Boehm, encouraged her to form an LLC. She was advised that after forming an LLC, she would be paid by the square footage of areas she painted, rather than by the hours she worked. A letter of resignation was requested from her, and at no time was she advised of the negative consequences she would suffer in giving up her position with the company.

The reasons why Rowan quit her position with Dream It, to reduce the number of hours she worked and to maintain equivalent or greater pay, are directly related to her employment. Dream It was responsible for encouraging Rowan to form her LLC because Herman emphasized that she would not have to work as many hours to earn more money, but he

---

**3.** The decision upon reconsideration issued by the ULJ is incomplete. The ULJ states that Rowan did not quit her employment for good reason caused by Dream It. He then proceeds to explain his reasoning, but the text of his reasoning ends in the middle of a word:

Rowan quit so that she could work under the auspices of her own LLC because she believed doing so would allow her to earn more and work less. [Dream It] was not

responsible for Rowan's decision to form [her LLC]. Rowan made the decision, hired the lawyer to form [her LLC], and obtai

It appears the portion missing would be further reasoning for the ULJ's legal conclusion that Rowan did not quit for good cause. Since this court reviews de novo the legal issue of whether Rowan had good reason to quit caused by Dream It, the missing analysis does not prejudice either party.

did not inform her that, by so proceeding, she would no longer be eligible for unemployment benefits and that Dream It would not be required to offer her work.

Dream It's decisions to reduce Rowan's hours and to shortly thereafter inform her of the advantages of forming an LLC, without discussing the disadvantages, were adverse to Rowan because they led to her quitting her job. By quitting and forming the LLC—as advised by her employer—she simultaneously lost her status as an employee, any certainty in obtaining work, and her eligibility to receive unemployment benefits, "a temporary partial wage replacement to assist the unemployed worker to become reemployed." Minn.Stat. § 268.03, subd. 1 (2010). Because Dream It was not required to offer Rowan's LLC jobs, she also lost the guarantee of sufficient hours. These circumstances are especially adverse in an industry such as the construction industry that experiences seasonal work shortages. The legislature has recognized the particularly adverse consequences of seasonal employment by providing that employees who report that they are laid off because of lack of work are immediately eligible for unemployment benefits, without further inquiry by DEED as to the reason for separation, provided that other requirements are met. Minn.Stat. § 268.101, subd. 1(a) (2010); *see, e.g.,* Minn.Stat. § 268.085, subd. 1 (2010) (setting out eligibility conditions to receive unemployment benefits). In contrast, employees who report separation from employment for any other reason present an issue of ineligibility that must be first decided by DEED. Minn.Stat. § 268.101, subd. 1(a).

■ An average reasonable employee would be compelled to quit in this situation. "In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances." *Ferguson v. Dep't of Emp't Servs.,* 311 Minn. 34, 44 n. 5, 247 N.W.2d 895, 900 n. 5 (1976) (quotation omitted).

Rowan had her hours reduced before she formed her LLC. Dream It encouraged her to form her LLC based on the reasoning that she could make more money and work fewer hours. Faced with the continued reduction of her hours, an average reasonable employee who was encouraged by her supervisor to resign and form an LLC, but who was not informed of the negative consequences of losing her employee status, would choose to resign.[4]

Finally, Dream It was aware that Rowan's hours were decreasing and, rather than laying off Rowan and allowing her to remain eligible for unemployment compensation as it had in the past, instead advised Rowan to quit work and form an LLC. This flies in the face of public policy, because those not classified as employees "miss out on legal protections including the Fair Labor Standards Act, Workers Compensation, and Unemployment Insurance."[5]

---

4. This reasoning is distinguishable from the situation contemplated by Minn.Stat. § 268.095, subd. 3(e) (2010), which states, "Notification of discharge in the future, including a layoff because of lack of work, is not considered a good reason caused by the employer for quitting." Rowan did not quit based on such notification by Dream It. Her hours had been reduced because of lack of work, but Dream It never indicated that she would be discharged in the future.

5. Minn. Dep't of Labor & Indus., *Advisory Task Force on Employee Misclassification Report to the 2011–2012 Biennium, 87th Legislature* (May 13, 2011), http://www.doli.state.mn.

Rowan's decision to form her LLC and quit her employment was directly related to her employment with Dream It; Dream It is responsible for the decision because the idea of having Rowan form an LLC originated with Dream It and Dream It encouraged Rowan to resign and form an LLC without informing her of the consequences of quitting. The decision to form her LLC and quit her employment was adverse to Rowan because she was no longer eligible for unemployment benefits once she was no longer an employee of Dream It. Because of these reasons, and because an average reasonable employee who had her hours reduced and was then advised by her employer to form an LLC and resign but was not informed as to the negative consequences of doing so, would have felt compelled to quit in the same situation, Rowan had good reason to quit caused by Dream It on November 9, 2010.

## DECISION

When Dream It encouraged Rowan to resign her employment and form her own LLC, but did not inform her that she would no longer be eligible for unemployment benefits once she did so, she had good reason to quit caused by the employer. Rowan is qualified to receive unemployment benefits under Minn.Stat. § 268.095, subd. 1(1) (2010). We reverse the decision of the ULJ.

**Reversed.**

us/ccld/PDF/ Employee_misclassification_re- port_May2011.pdf.