Donald RICHMOND, Plaintiff
and Appellant,

v.

Irvin NODLAND, Defendant
and Appellee.

Civ. No. 920372

Supreme Court of North Dakota.

June 16, 1993.

Donald Richmond, pro se.

James S. Hill (argued), of Zuger Kirmis & Smith, Bismarck, for defendant and appellee.

LEVINE, Justice.

Donald Richmond appeals from a district court summary judgment dismissing his ac-

tion against Irvin Nodland for fraud and deceit, legal malpractice and breach of contract. We affirm.

In February 1988, Richmond was charged with arson in connection with a December 1987 mobile home fire. In May 1988, before the preliminary hearing, Assistant Burleigh County States Attorney Bruce Haskell filed, and the trial court granted, a motion to dismiss the arson charge against Richmond. The factual circumstances underlying these events are detailed in *Richmond v. Haney*, 480 N.W.2d 751 (N.D.1992), and need not be repeated here.

When Richmond learned he had been charged with arson, he contacted attorney Calvin Rolfson. Rolfson met with Haskell, reviewed the criminal complaint and supporting investigative reports in the file, and determined "that there was sufficient probable cause to charge [Richmond] with arson...." Rolfson recommended that Richmond be represented by a more experienced criminal defense attorney and arranged an April 6, 1988, meeting between Nodland and Richmond to discuss possible representation. Richmond claims that Rolfson also told him that Nodland would require a $10,000 retainer fee, but that any amount not used for Richmond's defense would be refunded. Although the parties dispute the terms of the retainer agreement reached at the April 6 meeting, it is undisputed that Nodland agreed to represent Richmond on the arson charge and that Richmond gave Nodland a $10,000 check.

Nodland entered an appearance on Richmond's behalf. He contacted Haskell and advised him of potential defects in the case, including Richmond's failure to sign the proof of loss form that had been submitted to the insurance carrier for the mobile home. In May 1988, on the date scheduled for Richmond's preliminary hearing, Haskell filed a motion to dismiss the criminal complaint. Haskell explained in an affidavit:

"The motion to dismiss was based upon my conversation with a representative of Allstate Insurance Company. I was in-

formed that a proof of loss form had been submitted to the company, but that the form was apparently unsigned and that no other action had been taken to pursue the claim. It was my belief at that time that the failure to pursue the insurance claim would make it difficult to prove that Donald Richmond set the fire for the purpose of collecting insurance proceeds, therefore dismissal was appropriate."

The trial court granted the motion.

In April 1990, Richmond, appearing pro se, brought this action against Nodland for damages arising from Nodland's legal representation of him in regard to the 1988 arson charge. Richmond sought to recover for breach of contract the $10,000 he paid Nodland to represent him as well as damages for fraud and deceit and legal malpractice. Richmond alleges that Nodland fraudulently induced him into paying $10,000 for a trial defense requiring numerous expert witnesses that Nodland "knew would not be needed and which would not take place." Richmond further alleges that Nodland advised him that Haskell had been notified that there was no probable cause for issuance of the complaint, but that Haskell nevertheless refused to dismiss the charge. Richmond also alleges that Nodland deceived him by this advice in order to obtain the $10,000 advance for a defense in court when Nodland knew the complaint would ultimately be dismissed without the necessity of a trial. He asserts that he did not want the arson charge dismissed and that the terms of the fee arrangement with Nodland were that "if Haskell did change his mind and dismiss before the case got into court, the $10,000.00 would be returned" to him.

The trial court granted Nodland's motion for summary judgment, dismissing all of Richmond's claims. Richmond appeals, asserting that summary judgment was improperly granted in this case.

■■■ Summary judgment is appropriate when, after viewing the evidence in the light most favorable to the party opposing the motion, there are no genuine issues of material fact or conflicting inferences

which can reasonably be drawn from undisputed facts, or when the only issues to be resolved are questions of law. *United Accounts, Inc. v. Teladvantage, Inc.,* 499 N.W.2d 115, 119 (N.D.1993). Under N.D.R.Civ.P. 56, the movant has the burden of establishing entitlement to summary judgment. *First State Bank of Casselton v. McConnell,* 410 N.W.2d 139, 140–141 (N.D.1987).

■ We agree with Nodland that the trial court properly granted summary judgment dismissing Richmond's claim for fraud and deceit. That claim is premised on Richmond's assertions that there was no probable cause to support the arson charge, that Nodland knew this at all times, and that Nodland fraudulently obtained the $10,000 fee because he knew no trial would take place. In *Richmond v. Haney, supra,* 480 N.W.2d at 758, we affirmed a summary judgment dismissing Richmond's malicious prosecution action based on the filing of the arson complaint, holding that "a person need not actually sign a proof of loss claim to be guilty of arson" and that "probable cause existed to instigate the prosecution against" Richmond. There is no dispute as to material facts on this issue. We conclude that the trial court properly granted summary judgment dismissing Richmond's claim based on fraud and deceit.

We also agree with Nodland that summary judgment of dismissal was proper with regard to Richmond's claim of legal malpractice. Richmond appears to argue that Nodland committed legal malpractice by failing to obtain a dismissal of the arson charge prior to accepting the $10,000 retainer and by advising him that a dismissal of the charge would be difficult to obtain.

■ The elements of a legal malpractice action against an attorney for professional negligence are the existence of an attorney-client relationship, a duty by the attorney to the client, a breach of that duty by the attorney, and damages to the client proximately caused by the breach of that duty. *Klem v. Greenwood,* 450 N.W.2d 738, 743 (N.D.1990). The standard of care or duty to which an attorney is held in the performance of professional services is that degree of skill, care, diligence and knowledge commonly possessed and exercised by a reasonable, careful, and prudent attorney in the state. *Sheets v. Letnes, Marshall & Fiedler, Ltd.,* 311 N.W.2d 175, 180 (N.D.1981). Generally, expert testimony is necessary to establish the professional's standard of care (duty) and whether the professional's conduct in a particular case deviated from that standard of care (breach of duty). *Wastvedt v. Vaaler,* 430 N.W.2d 561, 565 (N.D.1988). If the professional's misconduct is so egregious and obvious that a layperson can comprehend the professional's breach of duty, expert testimony is not required. *Id.* Because of the complexities of the practice of law, it is a rare case when expert testimony is not required to establish the professional's standard of care and the breach of that duty. *See* 2 Mallen & Smith, *Legal Malpractice* §§ 27.14 and 27.15 (3d ed. 1989).

■ Nodland's asserted acts of professional misconduct cannot be classified as so egregious and obvious that a layperson could comprehend a breach of duty without the assistance of expert testimony. In support of his motion for summary judgment, Nodland submitted an affidavit of an expert who reviewed the documents and depositions filed in this case and concluded that "Nodland had no obligation to Richmond prior to April 6, 1988," and that "Nodland met or exceeded any standard of practice which would apply under these circumstances in his representation of Donald Richmond during the time frame of April 6, 1988 through the date of dismissal." Even though this action was commenced more than three years ago, Richmond has not produced any expert witness testimony to controvert this expert's opinions, nor has he indicated that he needs additional time to obtain a supporting expert opinion. Under these circumstances, we conclude that there is no genuine issue as to material facts on Richmond's legal malpractice claim and that the trial court properly granted summary judgment dismissing it. *See Klem v. Greenwood, supra,* 450 N.W.2d at 744 n. 5; *see also*

*Boigegrain v. Gilbert,* 784 P.2d 849, 850 (Colo.Ct.App.1989); *Schmidt v. Hinshaw, Culbertson, Etc.,* 75 Ill.App.3d 516, 31 Ill. Dec. 357, 362–63, 394 N.E.2d 559, 564–565 (1979); *Bloom v. Dieckmann,* 11 Ohio App.3d 202, 464 N.E.2d 187, 188 (1983); Annot., *Admissibility and Necessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Action Against Attorney,* 14 A.L.R. 4th 170 (1982).

■ We also agree that the trial court properly granted summary judgment dismissing Richmond's breach of contract claim against Nodland. Nodland asserts that Richmond's payment of $10,000 was for a non-refundable retainer agreement which covered Nodland's legal services commencing on April 6, 1988, through a jury trial, if one was necessary. Richmond asserts that the entire $10,000 would not become owing unless there was a trial or other in-court proceeding on the arson charge. However, in a letter to Rolfson dated May 11, 1988, in the midst of the legal maneuvering over the criminal charge and almost two years before this action was commenced, Richmond disclosed his knowledge of the terms of his agreement with Nodland to pay a non-refundable $10,-000 for Nodland's services. While Richmond complained to Rolfson that the deal Nodland insisted upon was not the deal that Rolfson had forecast would occur, it is clear from the letter that Richmond understood very well what he had to pay to acquire Nodland's services. In the letter to Rolfson, Richmond stated:

> "I made out a check to Irv Nodland in the amount of $10,000. He said that this would cover thru a jury trial. If we lost, I would be required to pay more for the appeal. I asked if a major part of this $10,000 would be refunded if, as I expected, it was dismissed at the hearing. Irv said there was no refund. You heard me tell Irv that this wasn't my understanding; that you had told me money was drawn off the advance as needed for fees and expenses, and that if there was anything left, it was refunded. You then interjected to say that what you had said outlined how your firm handled ad-vances, and that you thought Irv worked the same way!"

The fee agreement reached by the parties at the April 6 meeting was not reduced to writing. Ordinarily, when a fee contract for legal services is oral rather than written and must be proved by the testimony of the parties, summary judgment is inappropriate to resolve disputed issues of material fact as to the terms of the fee contract. *See McAdam v. Dynes,* 442 N.W.2d 914, 916 (N.D.1989). In this case, however, even viewing the evidence in the light most favorable to Richmond, we conclude that there are no genuine issues of material fact about the terms of the parties' oral fee agreement. The trial court did not err in granting summary judgment dismissing Richmond's breach of contract claim against Nodland.

Accordingly, the summary judgment is affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.