Filed 6/8/01 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2001 ND 110

Carol Kay Moen and LaRae A. 

Thomas, Co-Trustees of the 

Jay V. Thomas Family Trust, Plaintiffs

v.

Laurie Thomas, individually 

and as surviving spouse, heir 

and personal representative of 

Jerry J. Thomas, deceased, and 

his estate, and Kisten Thomas 

and Tessa Thomas, their minor 

children, by Laurie Thomas, 

their guardian,   Defendants, Third-Party

    Plaintiffs and Appellants

             v.

Fred C. Rathert and Neff Cresap

Rathert Eiken & Irigoin, P.C.,                                                Third-Party Defendants

                                                                                                               and Appellees

No. 20000111

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Debbie Gordon Kleven, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Neumann, Justice.

Greg W. Hennessy, Hennessy Law Office, P.C., P.O. Box 756, Williston, N.D. 58802-0756, for defendants, third-party plaintiffs and appellants.

Frederick E. Whisenand (on brief) and Shane D. Peterson (argued), Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., P.O. Box 1206, Williston, N.D. 58802-1206, for third-party defendants and appellees.

Moen v. Thomas

No. 20000111

Neumann, Justice.

[¶1] Laurie Thomas, Kisten Thomas, and Tessa Thomas have appealed from a summary judgment dismissing their legal malpractice claim against Fred Rathert and his firm, Neff Cresap Rathert Eiken & Irigoin, P.C.  We reverse and remand, concluding there are genuine issues of material fact which preclude summary judgment.

I

[¶2] Laurie was married to Jerry Thomas and the couple had two daughters, Kisten and Tessa.  Jerry’s father, Jay Thomas, owned a ranch in Williams County.  During their marriage, Jerry and Laurie lived on the Thomas family ranch and worked the ranch with Jay.

[¶3] Fred Rathert was Jay’s attorney.  Between 1987 and 1994 Rathert prepared several wills and codicils for Jay.  Under the terms of the final will, executed in 1994, Jay devised the ranch headquarters and some additional land to Jerry.  The will also gave Jerry the option to purchase the surface of other ranch land on a contract for deed.  If Jerry did not exercise that option, the will provided he could lease the land for $3 per acre annually for seven years, with an option to purchase during the lease term.  In addition to other bequests to individuals, the residue of Jay’s estate was bequeathed in equal shares to Jay’s wife and six children.

[¶4] Jay died on October 19, 1995.  Shortly thereafter Rathert met with Jay’s wife and children to discuss probate of the will.  The will was admitted to probate on November 6, 1995, and Jay’s daughter, Donna Sneva, was appointed personal representative.  Jay’s wife and children held several family meetings, with and without Rathert, to discuss various estate and tax issues.  Laurie concedes that during one of these early family meetings Rathert advised the family members there might be possible conflicts and they all should consult with their own attorneys.  During a December 1995 family meeting Jerry declined the option to purchase the property on a contract for deed but stated he wanted to exercise his right to lease the property.

[¶5] As the probate progressed, Rathert suggested to the family that they place the property in trust to administer the surface and mineral interests of the estate.  Further family meetings were held, with Rathert advising the family members about the “pros and cons” of the trust arrangement.  Rathert drafted the trust agreement which was signed by the family members, including Jerry, on December 3, 1996.  The trust agreement provided that Jerry had the “right and option to lease the property for agricultural purposes as provided in the Last Will and Testament of Jay V. Thomas.”  Jay’s daughters, LaRae Thomas and Carol Moen, were named co-trustees of the trust.

[¶6] Although Rathert originally intended to draft a written lease between the trust and Jerry, one of the co-trustees advised the office staff at Rathert’s firm that the family would prepare their own lease with Jerry.  LaRae Thomas subsequently delivered to Rathert’s office a handwritten note which stated: “It is Carol’s and my intention to draw up our own lease agreement following terms stated w/in the Will.”  In compliance with these instructions Rathert did not draft a written lease agreement, and no written agreement between Jerry and the trust was ever executed. 

[¶7] Jerry died in a ranching accident on May 12, 1997.  Laurie continued in possession of the property, and in December 1997 tendered a check for rent for 1998 to the trustees.  The trustees returned the check, notifying her there was no valid lease agreement.

[¶8] When Laurie continued in possession, the trustees brought an action against Laurie, Kisten, and Tessa (collectively “Laurie”) to quiet title to the property, to recover possession, and seeking damages for the value of use and occupation of the premises.  Laurie answered and counterclaimed, and filed a third-party complaint against Rathert and his law firm (collectively “Rathert”) for legal malpractice.  Rathert answered and moved for summary judgment, arguing there was no attorney-

client privity between Rathert and Jerry, Laurie, or their daughters.  The trial court granted Rathert’s motion, holding that there was no attorney-client relationship between Rathert and Jerry, Laurie, or their daughters, and that attorney-client privity was required to bring a legal malpractice action.  Summary judgment dismissing Laurie’s legal malpractice claim against Rathert was entered on February 4, 2000.  

[¶9] The quiet title action proceeded to trial, and judgment was entered quieting title in the trust, ordering the trust was entitled to exclusive possession of the property, and awarding damages for the use and occupation of the property for 1998 and 1999.  Laurie appealed from the summary judgment dismissing the malpractice claim against Rathert.
(footnote: 1)

II

[¶10] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for promptly and expeditiously disposing of a controversy without a trial if there is no genuine issue of material fact, or if the law is such that resolution of the factual disputes will not alter the result.  
Schaefer v. Souris River Telecomm. Co-op.
, 2000 ND 187, ¶ 8, 618 N.W.2d 175; 
Grinnell Mut. Reinsurance Co. v. Farm & City Ins. Co.
, 2000 ND 163, ¶ 18, 616 N.W.2d 353.  The party moving for summary judgment bears the burden of establishing that there is no genuine issue of material fact and that, under applicable principles of substantive law, he is entitled to judgment as a matter of law.  
Finstrom v. First State Bank of Buxton
, 525 N.W.2d 675, 678 (N.D. 1994).  In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence.  
Mougey Farms v. Kaspari
, 1998 ND 118, ¶ 12, 579 N.W.2d 583.  When there are relevant unresolved issues of fact, the granting of summary judgment is improper.  
Midwest Cas. Ins. Co. v. Whitetail
, 1999 ND 133, ¶ 10, 596 N.W.2d 341.  We have previously cautioned summary judgment is generally inappropriate in legal malpractice actions.  
Klem v. Greenwood
, 450 N.W.2d 738, 743 (N.D. 1990).  On appeal, whether the trial court properly granted summary judgment is a question of law and is reviewed de novo.  
Garofalo v. St. Joseph’s Hosp.
, 2000 ND 149, ¶ 6, 615 N.W.2d 160.

III

[¶11] The trial court granted summary judgment based upon its conclusion a legal malpractice action may only be brought when there was attorney-client privity between the parties.
(footnote: 0)  The court concluded Rathert never represented Jerry, Laurie, or their daughters, and therefore determined one of the essential elements of legal malpractice under North Dakota law was missing.  In its order granting Rathert’s motion for summary judgment, the trial court determined there was no attorney-client relationship between Rathert and Jerry:

Rathert was the attorney for the personal representative of Jay Thomas’s estate and the attorney for the Co-Trustee [sic] of the trust which was set up for the distribution of Jay Thomas’s estate.  Rathert was not hired by Jerry to be his attorney.  Jerry was one of the settlors and one of the beneficiaries of the trust, but he was not trustee.  Therefore, no legal duty may be placed upon Rathert in his relationship with Jerry because there was no privity.

[¶12] The trial court’s analysis is far too simplistic within the context of the complex facts and circumstances of this case.  The record on summary judgment establishes that Rathert represented different clients at different times during the course of events 

leading to this litigation.  Rathert was Jay Thomas’s long-time attorney and drafted the 1994 will.  After Jay’s death, Rathert became the estate attorney and represented the personal representative in probating the will.  After the trust came into existence, Rathert apparently represented the co-trustees.  On this record, however, there is conflicting evidence regarding who Rathert was representing when he advised the family members to set up a trust and when he drafted the trust documents.

[¶13] The existence of an attorney-client relationship is ordinarily a question of fact.  
See, e.g.
, 
Robertson v. Gaston Snow & Ely Bartlett
, 536 N.E.2d 344, 348 (Mass. 1989); 
Admiral Merch. Motor Freight, Inc. v. O’Connor & Hannan
, 494 N.W.2d 261, 265 (Minn. 1992); 
Keegan v. First Bank of Sioux Falls
, 519 N.W.2d 607, 611 (S.D. 1994); 
Stiley v. Block
, 925 P.2d 194, 202 (Wash. 1996); 
cf.
 
Wall v. Lewis
, 393 N.W.2d 758, 763 (N.D. 1986) (determination of the date of termination of an attorney’s representation of a client is a question of fact).  It is not necessary that there be an express contract or payment of fees; an attorney-client relationship may be implied from the conduct of the parties.  
See
 
Stormon v. Weiss
, 65 N.W.2d 475, 520 (N.D. 1954); 
Robertson
, 536 N.E.2d at 348; 
Keegan
, 519 N.W.2d at 611.

[¶14] A factfinder could draw various inferences from the evidence in this record about whom Rathert was representing when the trust was discussed, drafted, and executed.  The record demonstrates Rathert was present at several family meetings with Jay’s children where the trust was discussed.  Rathert’s own affidavit in support of the motion for summary judgment states he suggested use of a trust to the family members and provided legal advice about the advantages and disadvantages of a trust:

On March 6, 1996, your affiant attended another family meeting at which the appraisal in the estate was reviewed.  The establishment of a trust for administration of surface and mineral interests was also discussed with the consensus being that LaRae Thomas would be trustee.  The terms of the lease to be entered into with Jerry Jay Thomas were also discussed.  Jerry Jay Thomas had already advised the family that he wanted to lease the property and the family was concerned as to any difficulties that would be encountered if the property were distributed and then leased to Jerry Jay Thomas by each beneficiary as contrasted with one lease from the estate together with the mechanics as to how the rental payments would be distributed.  There was also concern as to the need to restrict public access and use of the property, the limiting of hunting on the property, and the availability of the property for the limited personal recreational use of family members.  
Your affiant suggested and discussed with the family the use of a trust and pointed out the pros and cons of such an arrangement.

. . . .

In September and October, 1996, 
a trust document was drafted with input from family members and copies circulated for review
.  At about the same time, Marie Vance, the probate clerk for Neff Cresap Rathert Eiken & Irigoin, P.C. prepared a list setting forth the steps needed to close this file. . . . One of the items to be completed was the contemplated written lease between Jerry Jay Thomas and the trustees of the family trust.

On December 3, 1996, an agreement was approved by all family members whereby the Jay V. Thomas Family Trust was to be created and established with Carol Kay Moen and LaRae A. Thomas designated as trustees.  All of the property identified in the agreement was to be distributed to the trustees by the personal representative of the estate.  The Jay V. Thomas Trust agreement was executed the same day and a deed of distribution was executed by the personal representative conveying the property identified in the agreement to the trustees.  (Emphasis added).

[¶15] The deposition testimony of Laurie, as well as Jerry’s contemporaneous written notes from the family meeting with Rathert, indicate Jerry and Laurie believed Rathert was representing Jerry and they were relying upon Rathert’s counsel and advice.  Jerry was a settlor and beneficiary of the trust.  Under the circumstances of this case, where there is evidence Rathert suggested use of a trust and provided legal advice about the advantages and disadvantages of such an arrangement to all of the family members, there is a genuine issue of fact whether Rathert was representing all of the settlors of the trust, including Jerry.  An attorney who advises multiple parties in a complex string of transactions such as this runs the risk of creating attorney-client relationships with all of the parties unless there is a clear disclaimer advising them that the attorney is not representing them and that they should seek their own counsel.
(footnote: 3)
[¶16] We conclude there is a genuine issue of material fact whether there was an attorney-client relationship between Rathert and Jerry.  Accordingly, the trial court erred in granting summary judgment dismissing the legal malpractice claims.  We reverse the judgment and remand for further proceedings.

[¶17] William A. Neumann

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

Maring, Justice, concurring in part and dissenting in part.

[¶18] I concur in that part of the majority opinion concluding the trial court erred in granting summary judgment because there is a genuine issue of material fact whether there was an attorney-client relationship between Rathert and Jerry. 

[¶19] In my opinion, however, our Court should recognize an exception to the general rule that an attorney is not liable to a person with whom the attorney does not have an attorney-client relationship.  If the fact finder concludes an attorney-client relationship did not exist, Laurie should have the opportunity, in the alternative, to establish the facts of her case fit within such an exception.  The cases extending the attorney’s duty to non-clients are limited to factual situations in which the client’s sole purpose in retaining an attorney is to benefit directly some third party. 
Jewish Hosp. v. Boatmen’s Nat’l Bank of Belleville
, 633 N.E.2d 1267, 1275 (Ill. App. Ct. 1994);  
Francis v. Piper
, 597 N.W.2d 922, 924 (Minn. Ct. App. 1999).  This exception is generally confined to those cases involving drafting or executing a testamentary instrument and is narrow so as not to expose the lawyer to unlimited liability.  
Hare v. Miller, Canfield, Paddock and Stone
, 743 So.2d 551, 553 (Fla. Dist. Ct. App. 1999); 
Holsapple v. McGrath
, 575 N.W.2d 518, 521 (Iowa 1998); 
Marker v. Greenberg
, 313 N.W.2d 4, 5 (Minn. 1981).  
See also
 Joan Teshima, Anno., 
What constitutes negligence sufficient to render attorney liable to person other than immediate client
, 61 A.L.R.4th 464, § 18(a) (1988 & Supp. 2000); Joan Teshima, Anno., 
Attorney’s liability, to one other than immediate client, for negligence in connection with legal duties
, 61 A.L.R.4th 615, § 11(a), (b) and (c) (1988 & Supp. 2000).  

[¶20] In determining whether a duty to non-clients arose in a case, courts frequently balance various factors including:

the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the injury, and the policy of preventing future harm. 

Lucas v. Hamm
, 364 P.2d 685, 687 (Cal. 1961).  
See also
 
Johnson v. Sandler, Balkin, Hellman & Weinstein, P.C.
, 958 S.W.2d 42, 48 (Mo. Ct. App. 1997).  
See also
 Anno., 61 A.L.R.4th 615, § 13(a).  I would instruct the trial court on remand to apply these factors to the circumstances surrounding the creation of the family trust agreement to determine if Rathert owed a duty of care to Jerry in the event the fact finder concludes there is not an attorney-client relationship between Rathert and Jerry.
(footnote: 0)  

[¶21] Mary Muehlen Maring

FOOTNOTES
1:    
Laurie filed a separate appeal from the judgment in favor of the trust in the quiet title action, and we affirmed the judgment.  
See
 
Moen v. Thomas
, 2001 ND 95.

0:
ぁぁ    
Our prior cases have indicated a plaintiff in a legal malpractice case must establish the existence of an attorney-client relationship.  
See, e.g.
, 
Dan Nelson Constr., Inc. v. Nodland & Dickson
, 2000 ND 61, ¶ 14, 608 N.W.2d 267; 
Bye v. Mack
, 519 N.W.2d 302, 304 (N.D. 1994), 
disapproved of on other grounds by
 
Dan Nelson Constr.
, at ¶ 15, n.1; 
Richmond v. Nodland
, 501 N.W.2d 759, 761 (N.D. 1993).  Laurie argues we should recognize an exception to the requirement of attorney-client privity based upon 
Sime v. Tvenge Assocs. Architects & Planners, P.C.
, 488 N.W.2d 606 (N.D. 1992).  We find it unnecessary to address this question of first impression in this State, because there is a genuine issue of material fact on whether there was an attorney-client relationship between Rathert and Jerry. 

3:    
We have previously, in a similar situation, cautioned attorneys that they should provide a written disclosure of potential conflicts and advise other parties in writing to seek independent counsel.  
See
 
In re Estate of Lutz
, 1997 ND 82, ¶ 35,  nn. 3-4, 563 N.W.2d 90.

0:
ぁぁ    
Expert testimony is required generally to establish the standard of care and a breach of the standard of care.  
Richmand v. Nodland
, 501 N.W.2d 759, 761 (N.D. 1993).