2012 ND 160

In the Matter of the APPLICATION FOR DISCIPLINARY ACTION AGAINST Camille O'Kara HANN, A Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court, Petitioner,

v.

Camille O'Kara Hann, Respondent.

Nos. 20110246, 20110247, 20110248.

Supreme Court of North Dakota.

July 26, 2012.

Paul W. Jacobson, Disciplinary Counsel, Bismarck, N.D., for petitioner.

Michael Ray Hoffman, Bismarck, N.D., for respondent.

PER CURIAM.

[¶ 1] Attorney Camille O'Kara Hann objected to a report of a hearing panel of the Disciplinary Board recommending Hann be suspended from the practice of law and pay the costs of the disciplinary proceedings. We conclude there is clear and convincing evidence Hann violated N.D.R. Prof. Conduct 1.5(a), fees; 1.15(a) and (c), safekeeping property; 1.16(e), declining or terminating representation; 3.3(a)(1) and (3), candor toward the tribunal; and 8.4(c), misconduct. We order Hann be suspended from the practice of law for six months and one day and pay the costs of the disciplinary proceeding in the amount of $7,010.76.

I

[¶ 2] Hann was admitted to practice law in North Dakota on May 5, 2005, and was practicing law during the time relevant to this case. Hann was served with a petition for discipline and notice of appointment of a hearing panel. Disciplinary Counsel alleged Hann violated the disciplinary rules in three separate matters. The first matter involved Heidi Zastoupil's retention of Hann to represent her regarding a petition for a protection order and divorce. The second matter involved Hann's representation of Donald Phillip Munro in legal matters related to the custody of his children. The third matter involved Hann's representation of Roxanne Kuntz in a divorce. A hearing was held before the hearing panel in June 2011. Based on the pleadings, evidence, and

post-hearing written arguments, the hearing panel filed findings of fact, conclusions of law, and recommendations with the Secretary of the Disciplinary Board. Hann thereafter filed her objections to the report.

### A. Zastoupil Matter, Supreme Court No. 20110246

[¶ 3] In July 2008, Zastoupil retained Hann to represent her regarding a petition for protection order and divorce. On July 17, 2008, Zastoupil and Hann signed a retainer agreement providing for payment of $1,280 by Zastoupil "as retainer before services can begin." The retainer agreement stated that legal fees would be $140 per hour for Hann's time and lesser amounts for her legal assistant, paralegal, and secretary's time. Zastoupil paid $1,280 to Hann; however, Zastoupil later returned to her husband and the divorce action was terminated. The hearing panel found Hann did not place the money received from Zastoupil in a client trust account until earned by her, although ultimately earned by her.

[¶ 4] In July 2009, Zastoupil again retained Hann to represent her in a divorce. On July 28, 2009, Zastoupil and Hann signed a second retainer agreement providing for the payment of $4,000 by Zastoupil, as a "retainer before services can begin." This retainer agreement provided that legal fees would be $160 per hour for Hann's time and lesser amounts for her legal assistant, paralegal, and secretary's time. Zastoupil paid $4,000 to Hann. Zastoupil called Hann's office within a few days of signing the second retainer agreement and informed her she was returning to her husband. The hearing panel found Zastoupil also inquired about returning the unused portion of the $4,000 she had paid to Hann for a retainer. The panel found Hann told Zastoupil she would have to speak with her accountant, she did not

have the money there, and she would contact Zastoupil. The panel also found that Zastoupil asked Hann in August 2009 for a refund of the retainer and that Hann told Zastoupil the $4,000 was a nonrefundable retainer and there would be no refund. Hann subsequently prepared a letter to Zastoupil stating the retainer was not refundable.

[¶ 5] In response to Disciplinary Counsel's information request, Hann provided a "Hann Law PLLC Individualized Client Account" for Zastoupil from July 2008 through September 20, 2009, and a "Hann Law PLLC invoice" for Zastoupil dated September 20, 2009, reflecting that Hann claimed she had earned a fee of $1,792 between July 15 and August 26, 2009, and that there was a balance of $2,208. The hearing panel found Hann had not placed the $4,000 received from Zastoupil in a client trust account. Hann did not return any of the $4,000 to Zastoupil.

[¶ 6] At the hearing, Hann testified a balance of $2,208 remained in this account "from an accounting standpoint." Although the account document contained the words "trust ledger," Hann testified the wording was in her computer program and the money was not placed in a trust account. Hann indicated that if Zastoupil retained her again, this balance might have been used to "knock some off of her new bill." Zastoupil also testified she was under the impression this was a credit for future services. The hearing panel found Hann provided no explanation why this amount remained on her books if Zastoupil's payment was a nonrefundable retainer. The hearing panel found Hann's testimony that this was a nonrefundable fee was inconsistent with her testimony this "earned fee" simply remained on her books. The panel found Zastoupil's testimony believable that she was told Hann was consulting

her accountant regarding the return of this fee.

[¶ 7] The hearing panel concluded Hann violated N.D.R. Prof. Conduct 1.5(a), concluding the agreement was unclear and deficient and did not state it was a nonrefundable fee agreement. The panel concluded because the work was not completed and this was not a nonrefundable fee agreement, the fees charged and collected and retained were unreasonable. The hearing panel concluded Hann violated N.D.R. Prof. Conduct 1.15(a) and (c), because this was not a nonrefundable retainer fee, the fee should have been deposited in Hann's trust account, but was not. The panel also concluded Hann violated N.D.R. Prof. Conduct 1.16(e) because this was not a nonrefundable fee agreement, because Hann did not complete the work for which she was retained, and because she did not refund any of the remaining money to Zastoupil.

### B. Munro Matter, Supreme Court No. 20110247

[¶ 8] Hann represented Donald Phillip Munro in legal matters related to the custody of his children. In an action relating to the custody of the parties' minor son in *Donald Phillip Munro v. Beth Ann Synder*, Adams County Case No. 09C–58, Hann filed an affidavit of her client Munro with a petition for a warrant and alternative motion for an ex parte interim ·order. The affidavit asserted Munro was the defendant in Adams County Case No. 07C–12, an earlier action regarding custody of the parties' minor daughter, and asserted the May 2007 judgment entered in Case No. 07C–12 granted the defendant custody of the parties' minor child. Specifically, Munro's affidavit stated:

A Judgment was entered in Adams County Case No. 07–C–12 on May 7, 2007 providing "Defendant" at provision XIII on page 4 with custody of the parties' minor daughter. I am the defendant in that action. There is no custody order regarding our minor son; therefore, I am filing this action regarding our minor son requesting the Court provide me with temporary responsibility for our children pending the final relief for placement of the children.

Munro's affidavit also stated: "A copy of the Judgment in Adams County Case No. 07–C–12 dated May 7, 2007 was faxed to Cheryl Dix on September 9, 2009 showing that 'Defendant' had custody of the parties' minor daughter. Again, I am the Defendant in that action." Hann also filed an affidavit of her client Munro, which contained the same statements, in the Adams County Case No. 07C–12, supporting a motion to amend the judgment and petition for the issuance of a warrant or an ex parte interim order.

[¶ 9] Munro, however, was not the defendant in Adams County Case No. 07C–12, but was actually the plaintiff. Although the May 2007 judgment in Case No. 07C–12 incorrectly designated Munro as defendant in the caption, the judgment itself correctly named Munro as the plaintiff in numerous paragraphs. The language of the judgment also named Beth Ann Snyder as defendant, as the party who actually received physical care, custody, and control of the parties' minor daughter. The hearing panel found that even a brief review of the judgment shows Munro was not the defendant and did not have custody of the parties' minor child. The findings of fact, conclusions of law, and order for judgment in Case No. 07C–12 correctly designated the parties, and the court subsequently corrected the caption of the May 2007 judgment. However, the hearing panel found the assertions in Munro's affidavits were untrue and misleading to the court and found the asser-

tions "could only have been knowingly made."

[¶ 10] The hearing panel concluded Hann violated N.D.R. Prof. Conduct 3.3(a)(1) and (3), because the affidavit Hann filed for Munro represented he was the defendant with custody. The panel concluded that although the May 2007 judgment caption had incorrectly identified the parties, the judgment's substantive language repeatedly correctly identified Munro as the plaintiff who could not have had custody of the child.

### C. Kuntz Matter, Supreme Court No. 20110248

[¶ 11] The hearing panel found Hann began representing Roxanne Kuntz in a divorce in September 2009. The hearing panel found Kuntz and a friend, Lori Wahl, met with Hann during which Kuntz advised Hann that she had $36,000 in an individually held savings account. The panel found Hann did not include this initial conference in her billing, and Hann's legal assistant was not present during the first office conference. The hearing panel found Hann advised Kuntz to get rid of the money, or hide it, so that it would not be considered in a division of property. The panel noted that, although not an issue in the disciplinary proceeding, Zastoupil had testified Hann similarly advised her to give assets to her friends. The hearing panel found that, on Hann's direction, Kuntz withdrew the money and that Hann did not inform her legal assistant of the $36,000 account. On September 18, 2009, when Hann's legal assistant met with Kuntz to prepare a financial affidavit, Kuntz did not inform the legal assistant of the $36,000.

[¶ 12] On October 16, 2009, Hann notified Kuntz's spouse's attorney that Kuntz needed funds for daily living expenses. The attorney responded to Hann on October 19, 2009, that Kuntz had withdrawn $36,000. The hearing panel found that Hann apparently attended an interim hearing with Kuntz on October 26, 2009, and that no evidence or testimony was offered to indicate Hann had corrected the omission of the $36,000 from the financial affidavit which had been filed at the court. Hann testified the $36,000 account necessarily would have come to light in discovery prior to trial. The hearing panel found the testimony of Kuntz and Wahl credible and established Hann had knowledge of the $36,000 at the outset of the case. The panel found Hann did not ensure the $36,000 was disclosed in the September 18, 2009 financial affidavit and Hann made no effort to correct the financial affidavit with the court.

[¶ 13] The hearing panel concluded Hann violated N.D.R. Prof. Conduct 3.3(a)(1) and (3) because Hann knew Kuntz had access to $36,000 at the outset of the matter, failed to disclose it to the tribunal, and failed to correct the nondisclosure. The panel also concluded Hann violated N.D.R. Prof. Conduct 8.4(c) based on Hann's apparent failure to make any effort to correct the financial affidavit to the court.

## II

[¶ 14] We review disciplinary proceedings de novo on the record. *In re Disciplinary Action Against Dyer*, 2012 ND 118, ¶ 8, 817 N.W.2d 351; *In re Disciplinary Action against Kirschner*, 2011 ND 8, ¶ 9, 793 N.W.2d 196. " 'Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction.' " *Kirschner*, at ¶ 9 (quoting *Disciplinary Bd. v. Askew*, 2010 ND 7, ¶ 8, 776 N.W.2d 816). "We give the Disciplinary Board's findings, conclusions, and rec-

ommendations due weight, but we do not act as a mere rubber stamp." *Dyer,* at ¶ 8. "We consider each disciplinary matter on its own facts to decide which sanction, if any, is appropriate." *Id.*

## III

[¶ 15] Hann argues that she did not violate the Rules of Professional Conduct in the Zastoupil matter regarding fees. The hearing panel concluded that Hann violated N.D.R. Prof. Conduct 1.5(a), 1.15(a) and (c), and 1.16(e).

[¶ 16] Rule 1.5(a), N.D.R. Prof. Conduct, states that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." Rule 1.5(a) also provides eight factors to be considered in deciding the reasonableness of a fee. Rule 1.15, N.D.R. Prof. Conduct, addresses a lawyer's responsibility for the safekeeping of property, stating in part:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be deposited in one or more identifiable interest bearing trust accounts in accordance with the provisions of paragraph (f). Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer in the manner prescribed in paragraph (h).
>
> . . . .
>
> (c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

Further, N.D.R. Prof. Conduct 1.16(e) provides steps a lawyer must take in terminating representation:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client only to the extent permitted by Rule 1.19.

[¶ 17] Hann argues that she told Zastoupil that both the $1,280 and $4,000 retainers were nonrefundable and that neither of the fee agreements provided money would be deposited into a trust account to be withdrawn on a schedule or as time was expended. Regarding the $4,000 retainer agreement, Zastoupil and her husband reconciled and stopped the divorce, and Hann contends that Zastoupil never asked for any money to be returned and that Zastoupil stated that she did not want any balance and wanted to keep Hann retained. Although Hann's books for Zastoupil showed the balance of $2,208, Hann denied that any money had to be returned to Zastoupil.

[¶ 18] Hann argues that N.D.R. Prof. Conduct 1.5 does not require the fee agreement to be in writing, stating it is "desirable" that fee agreements be in writing, and since not refundable retainers are lawful and can be oral, she committed no violation by depositing $1,280 into her operating account. Relying on *Richmond v. Nodland,* 501 N.W.2d 759, 762 (N.D.1993), Hann asserts nonrefundable retainers "are legal in North Dakota." Hann further claims Disciplinary Counsel's "narrow position" has unilaterally amended the rules

and practice in North Dakota to make nonrefundable retainers illegal, and she acted within the applicable rules and law at the time of these client transactions.

[¶ 19] Regarding the balance of $2,208 of the $4,000 fee, Hann asserts this was part of a nonrefundable retainer. Hann asserts Disciplinary Counsel waived any argument that the $4,000 fee was unreasonable, but to the extent the issue has not been waived, the fee was reasonable. Although Hann's fee agreement does not state her fee was "nonrefundable" and "earned upon receipt," Hann argues that the fact that the fee is nonrefundable may be proven by parol evidence and that to the extent *In re Disciplinary Action Against Rozan*, 2011 ND 71, ¶ 30, 796 N.W.2d 384 (Crothers, J., concurring in part and dissenting in part), requires such an agreement be in writing, it should not be applied retroactively to sanction Hann. Hann also contends her fee was reasonable under N.D.R. Prof. Conduct 1.5(a) considering the circumstances surrounding a contentious divorce and the likelihood of precluding other employment. Hann argues that her agreements did not provide money to be paid into a client trust account and there is no clear and convincing evidence the money was "paid in advance" under N.D.R. Prof. Conduct 1.5.

[¶ 20] Comment 4 to N.D.R. Prof. Conduct 1.5 states that "[a] lawyer may require advance payment of a fee, but is obliged to return any unearned portion." We have said that the North Dakota Rules of Professional Conduct are based in part on the ABA's Model Rules of Professional Conduct. *Dyer*, 2012 ND 118, ¶ 21, 817 N.W.2d 351; *Nesvig v. Nesvig*, 2004 ND 37, ¶ 22, 676 N.W.2d 73. Further, the Model Rules contain a corresponding provision to N.D.R. Prof. Conduct 1.5, *see* Annotated Model Rules of Prof'l Conduct, R. 1.5 (7th ed.2011), and we have also said

we may find "other authorities' interpretations of the Model Rule or its state counterpart persuasive" when "[o]ther states have also adopted the Model Rules." *Dyer*, at ¶ 21. The Annotated Model Rules of Prof'l Conduct, R. 1.5 annot. at p. 80–81, provides that although a lawyer may require a client to advance legal fees, "the advance remains the property of the client until earned." "Pursuant to Rule 1.15, the advance must be placed in the lawyer's trust account, from which it may be drawn down as the lawyer does the work to earn it." Annotated Model Rules of Prof'l Conduct, R. 1.5 annot. at p. 80. The annotation then discusses the various extremes between advances as opposed to retainers:

Any unearned portion must be returned to the client at the end of the representation in accordance with Rule 1.16(d). *See, e.g., Ala. State Bar v. Hallett*, 26 So.2d [So.3d] 1127 (Ala.2009) (lawyer violated Rule 1.5(a) by charging divorce client flat fee that he treated as nonrefundable retainer); *In re Sather*, 3 P.3d 403 (Colo.2000) (designating advance fee as "nonrefundable retainer" is misleading and interferes with lawyer-client relationship); *In re Mance*, 980 A.2d 1195 [1196] (D.C.2009) (flat fee must be held as client funds in trust or escrow account until earned); *In re Kendall*, 804 N.E.2d 1152 (Ind.2004) (advance payments for future services are by definition refundable; therefore, agreement characterizing advance payment as nonrefundable violated reasonableness requirement of Rule 1.5(a)); *In re Dawson* [129 N.M. 369], 8 P.3d 856 (N.M.2000) (unearned nonrefundable fees are unreasonable); *Columbus Bar Ass'n v. Halliburton–Cohen* [106 Ohio St.3d 98], 832 N.E.2d 42 (Ohio 2005) (lawyer violated correlative Model Code provision by charging divorce client spurious "lost opportunity" fee that amounted to im-

permissible nonrefundable retainer); Alaska Ethics Op.2009–01 (2009) (misleading to describe fee or retainer in any way as "non-refundable"); Conn. Ethics Op. 00–02 (2000) (concept of retainer's nonrefundability is "slippery as a watermelon seed"); N.C. Formal Ethics Op. 13 (2006) (minimum fee billed against lawyer's hourly rate is client's money, unearned portion of which must be returned to client to avoid collecting excessive fee); Okla. Ethics Op. 317 (2002) (any advance payment should be held in trust account until earned, with unearned portion refunded to client at end of representation). . . .

At the other extreme is a general retainer. Because it buys the lawyer's availability for a particular representation or a particular time period, it may be considered earned when paid." *See, e.g., Ryan v. Butera*, 193 F.3d 210 (3d Cir.1999) (general nonrefundable retainer of $1 million for only ten weeks of work enforceable when client offered initial, one-time payment as "carrot" to attract counsel with "specific capability" despite client's history of nonpayment of legal fees); *Iowa Supreme Court [Attorney] Disciplinary Bd. v. Piazza*, 756 N.W.2d 690 (Iowa 2008) (distinguishing between "general retainer," where fee is earned when paid whether or not lawyer actually performs services for client, and "special retainer," which pays for specific service and remains client's property until earned); *In re Lochow*, 469 N.W.2d 91 (Minn.1991) (nonrefundable retainer may be appropriate if lawyer must forego representation of other clients and lose business as result of engagement; if retainer reasonable, it may be immediately earned, but agreement must be in writing and approved by client); N.C. Ethics Op. 10 (2008) (distinguishing between (prohibited) nonrefundable retainers and general re-

tainers, in which payment is solely to insure lawyer's availability for specific time period); *see also Wong v. Michael Kennedy, P.C.*, 853 F.Supp. 73 (E.D.N.Y.1994) (only when retainer paid solely for lawyer's availability may it be called "general retainer" and made nonrefundable; when client contracts for specified services, agreement is "special retainer" and must be refundable).

Annotated Model Rules of Prof'l Conduct, R. 1.5 annot. at p. 81.

[¶ 21] Courts have struggled over the use of terminology in analyzing retainer agreements. However, it has been explained that "[t]here are two categories of retainers: 'general' and 'special,' " that "[s]pecial retainers are further divided into two subcategories: 'security retainers' and 'advance fee retainers' or 'advance payment retainers,' " and that "[o]nly general retainers are 'retainers' in the genuine sense of the word; special retainers are in fact fee advances." Douglas R. Richmond, *Understanding Retainers and Flat Fees*, 34 J. Legal Prof. 113, 114 (2009) (citing *Ryan v. Butera, Beausang, Cohen & Brennan*, 193 F.3d 210, 216 (3d Cir.1999)).

General retainers are sometimes called "true" or "classic" retainers. General retainers are also referred to as "engagement fees" or "availability fees." A general retainer ensures a lawyer's availability during a given period of time, or for a specified case or matter. A lawyer may also earn a general retainer by agreeing to place the client's work atop the lawyer's list of priorities. A client may pay a general retainer to bind a lawyer or law firm to represent it while simultaneously foreclosing the lawyer or law firm from representing an adversary or competitor. In all these ways, a general retainer immediately benefits a client. A general retainer does not embody a lawyer's entire com-

pensation, however. If the lawyer's services are actually needed in the specified matter or at the agreed time, the lawyer will charge the client for those efforts in addition to the general retainer.

Richmond, *supra*, at 114–15 (footnotes and citation omitted). "General" or "classic" retainers are "paid as a consideration for a lawyer's employment, rather than for services rendered," are deemed "earned when paid" regardless of whether services are provided to the client, and thus a "lawyer is not required to hold the funds in a trust account until they are earned." *Id.* at 115–16 (citing *Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir.2005); *Kelly v. MD Buyline, Inc.*, 2 F.Supp.2d 420, 446 (S.D.N.Y.1998) (additional citation omitted)). Although general retainers are rare, special retainers are more common. Richmond, *supra*, at 116.

> [S]pecial retainers are further divided into two subcategories: security retainers and advance fee retainers or advance payment retainers. When clients and lawyers think of retainers, security retainers typically come to mind. A security retainer is intended to secure the client's payment of fees for future services that the lawyer is expected to perform. The client paying a security retainer is simply advancing the lawyer fees for future services. Indeed, security retainers are best thought of as fee advances.
>
> In a typical scenario, the lawyer who collects a security retainer draws it down pursuant to an agreed hourly rate as the lawyer earns the fees by performing legal services for the client. Alternatively, the lawyer may consider retained funds to be earned when all services to which the retainer relates are completed. Either way, retained funds remain the client's property until the lawyer applies them to charges for services that are actually performed. Lawyers must, therefore, deposit security retainers in their trust accounts and keep the funds there until they are earned. A lawyer must refund any unearned funds to the client upon discharge or at the completion of the engagement.
>
> . . . .
>
> The second type of special retainer is the advance fee retainer, also known as an advance payment retainer. An advance payment retainer is a present payment to a lawyer as compensation for the provision of specified legal services in the future. A standard advance payment retainer is intended to compensate the lawyer for all work to be done on a matter, regardless of the time required or the complexity of the assignment. It may also be used to compensate a lawyer for all work to be done on one aspect of a representation or a discrete component of a larger matter; again, regardless of the time required or complexity posed. Advance payment retainers are better known as fixed fees or flat fees— the latter description probably being more common.

Richmond, *supra*, at 117–18 (footnotes and citation omitted). Additionally, "[f]lat fees should never be confused with general retainers," and "a flat fee is a fee fully paid in advance for legal services to be rendered in the future." *Id.* at 118 (citing Va. State Bar, Standing Comm. on Legal Ethics, LEO 1606, at 3 (1994) (stating that the terms "advanced legal fees" and "retainers" are not synonymous)).

[¶ 22] Here, however, Hann's reliance on *Richmond*, 501 N.W.2d 759, for the broad proposition that nonrefundable retainers are legal in North Dakota is misplaced. In *Richmond*, at 760, the client commenced an action to recover money against his attorney for alleged damages

arising from the legal representation of him regarding an arson charge. The client sought in part to recover for breach of contract for not returning the $10,000 he had paid to the attorney, in addition to legal malpractice, fraud and deceit. *Id.*

[¶ 23] The district court granted the attorney's summary judgment motion dismissing all of the client's claims. *Richmond,* at 760. This Court held that the district court properly granted summary judgment on the client's breach of contract claim against the attorney. *Id.* at 762. While the attorney asserted that the $10,000 was a nonrefundable retainer agreement covering legal services through a jury trial, if necessary, the client asserted the entire $10,000 would not become owing unless there was a trial or other in-court proceeding. *Id.* Based in part on a letter in which the client acknowledged the attorney told him there would be no refund, this Court concluded no genuine issue of material fact existed about the terms of the parties' oral fee agreement. *Id.*

[¶ 24] Although this Court in *Richmond* enforced a nonrefundable retainer in a civil contract action over legal fees, *Richmond* was not a case involving disciplinary proceedings or application of the Rules of Professional Conduct. Thus, there is no analysis as to whether the fee was reasonable under N.D.R. Prof. Conduct 1.5. Although *Richmond* could possibly be viewed as a fully-performed, flat fee agreement, it is misleading to the extent that it would appear to support all nonrefundable retainer agreements. We also note that interpretation of the model rules and case law has developed significantly since *Richmond* was decided.

[¶ 25] Furthermore, our recent decisions suggest that even in flat fee agreement situations, there are necessarily factual determinations regarding whether the entire flat fee was "earned" and whether any portion of the fee must be refunded, when the initially contemplated legal work under the agreement was not completed. *See Rozan,* 2011 ND 71, ¶ 30, 796 N.W.2d 384 (Crothers, J., concurring in part and dissenting in part) (citing N.D.R. Prof. Conduct 1.16(e) (lawyer's duty upon termination of representation to refund "any advance payment of fee or expense that has not been earned or incurred"); *In re Disciplinary Action Against Karlsen,* 2008 ND 235, ¶ 9, 778 N.W.2d 522 ("The Hearing Panel found Karlsen was hired to represent [client] in an immigration matter for which he charged a non-refundable flat fee; Karlsen did not finish the work and did not refund the unearned portion of the fee."); *Disciplinary Board v. Madlom,* 2004 ND 206, ¶ 7, 688 N.W.2d 923 ("Madlom charged a 'non-refundable' $750 fee to prepare and file a Chapter 7 bankruptcy petition ... but failed to make a refund of fees when representation was terminated before the bankruptcy petition was filed in violation of N.D.R. Prof. Conduct 1.5(a).")). Nevertheless, any fee agreements will still need to meet the standards of "reasonableness" which apply to all fee agreements under N.D.R. Prof. Conduct 1.5.

[¶ 26] We need not set the permissible parameters of nonrefundable retainers here because the hearing panel in this case specifically found that Hann did not have a nonrefundable retainer agreement with Zastoupil. Zastoupil testified that she had called off the divorce and requested the return of some or any of the $4,000 retainer. The fee agreement did not specifically provide the payment was nonrefundable, there was no agreement the fee was nonrefundable, and there was evidence that Hann did not tell her client the money was nonrefundable. There is also evidence that Hann's financial records showed Zastoupil had a remaining balance,

which contradicted Hann's assertions. Further, upon request by her former client, Hann refused to refund any of the retainer paid under the agreement, which her own records showed she had not earned.

[¶ 27] Although Hann testified that she orally informed Zastoupil that the retainer was nonrefundable at the time of the signing of the agreement, the hearing panel found Zastoupil's testimony more credible. "On matters of conflicting evidence, we will defer to the hearing panel's findings on the credibility of witnesses because the hearing panel had the opportunity to observe the witnesses' demeanor and hear the witnesses testify." *In re Disciplinary Action Against Stensland,* 2011 ND 110, ¶ 12, 799 N.W.2d 341. Based on the record before us and the hearing panel's findings and conclusions, we conclude there is clear and convincing evidence that Hann violated N.D.R. Prof. Conduct 1.5(a), 1.15(a) and (c), and 1.16(e).

### IV

[¶ 28] Hann argues that she did not knowingly make a misrepresentation to Judge Zane Anderson in violation of N.D.R. Prof. Conduct 3.3(a)(1) and (3), and 8.4(c).

[¶ 29] Rule 3.3, N.D.R. Prof. Conduct, addressing a lawyer's duties of candor to a tribunal, states in relevant part:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

. . . .

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evi-

dence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal unless the evidence was contained in testimony of the lawyer's client. If the evidence was contained in testimony of the lawyer's client, the lawyer shall make reasonable efforts to convince the client to consent to disclosure. If the client refuses to consent to disclosure, the lawyer shall seek to withdraw from the representation without disclosure. If withdrawal is not permitted, the lawyer may continue the representation and such continuation alone is not a violation of these rules. The lawyer may not use or argue the client's false testimony.

. . . .

(c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

Rule 8.4(c), N.D.R. Prof. Conduct, provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer's fitness as a lawyer."

[¶ 30] Hann argues this violation is not supported by clear and convincing evidence and the hearing panel's conclusion that she failed to correct the Munro affidavit was not alleged by Disciplinary Counsel in the petition and is "hyper-technical." Hann contends Judge Anderson immediately caught the misrepresentation, that no evidence shows a corrected affidavit was relevant, material, or necessary, and that the error was found and appropriately dealt with by Judge Anderson and the

parties in that case. Hann argues the facts establish her submission of the affidavits was not a "knowing act."

[¶ 31] Under N.D.R. Prof. Conduct 1.0(g), "knowingly" is defined as "actual knowledge of the fact in question. A person's knowledge may be inferred from the person's conduct in the circumstances." *See Dyer,* 2012 ND 118, ¶ 29, 817 N.W.2d 351; *In re Disciplinary Action Against Johnson,* 2007 ND 203, ¶ 19, 743 N.W.2d 117. Comment 8 to N.D.R. Prof. Conduct 3.3 provides that "[t]he prohibition against offering false evidence only applies if the lawyer knows that the evidence is false" and "[a] lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact." However, "although a lawyer should resolve doubts about the veracity of testimony or other evidence in favor of the client, *the lawyer cannot ignore an obvious falsehood.*" N.D.R. Prof. Conduct 3.3 cmt. 8 (emphasis added). We also have discussed the high duty of candor placed upon attorneys stating that "[t]ruth and candor are synonymous with justice, and honesty is an implicit characteristic of the legal profession" and acknowledging "[o]ur courts are almost wholly dependent on members of the bar to marshal and present the true facts." *Johnson,* at ¶ 30 (citations and quotations omitted). Further, failure to make a disclosure may be the equivalent of an affirmative misrepresentation. *Id.*

[¶ 32] Here, Hann testified that her mere mistake or oversight was a matter which was easily discovered and would not have benefitted her client. She also attributed the affidavits' incorrect assertions to inattentiveness and being in a hurry based on the circumstances of the case. However, Judge Anderson testified regarding his concerns that this was an intentional misrepresentation of Hann's client's status as a party in the prior action

and was in effect an attempt to mislead the judge. Although Judge Anderson acknowledged it could have been an honest mistake, he also testified that Hann had to know that Munro was not the defendant who had received custody in the prior case.

[¶ 33] Here, the evidence shows Judge Anderson found the error, addressed the misrepresentation in his subsequent order denying Hann's petition, and wrote a letter to the Disciplinary Board of a possible violation. Based on a cursory reading of the May 2007 judgment, despite the incorrect caption, there are multiple references that make clear Munro was the plaintiff and had not received custody. To the extent the affidavits state the fact that Munro was the "defendant" in the judgment's caption—although concededly in error—it is more than "hyper-technical," but an obvious attempt to mislead the court. Hann could not ignore the "obvious falsehood" in the affidavits she submitted, and her knowledge may be properly inferred under these circumstances. We conclude there is clear and convincing evidence that Hann violated N.D.R. Prof. Conduct 3.3(a)(1) and (3), and 8.4(c).

V

[¶ 34] Hann contends that she did not advise her divorce client to hide money in violation of N.D.R. Prof. Conduct 8.4(c).

[¶ 35] Hann asserts that, at the time Hann met with Kuntz on September 18, 2009, Kuntz had already kept the $36,000 from Hann's legal assistant, and the legal assistant and Kuntz had already prepared drafts of the financial statement which did not include the $36,000. Hann asserts that when Hann met with Kuntz on September 18, 2009, it was to review the draft already done for the financial statement. Although the hearing panel found Hann failed to correct the financial affidavit, Hann argues this was not alleged in the

petition for discipline and asserts she first learned of the $36,000 from Kuntz's spouse's attorney on October 22, 2009. Hann argues no evidence was presented by the Disciplinary Counsel regarding the district court's interim order hearing on October 26, 2009, or how the financial affidavit was addressed at that hearing by Hann, opposing counsel, or the court. Hann argues that "[t]he likelihood is" that it had been properly addressed.

[¶ 36] Although Hann argues the evidence presented on this issue was neither credible nor clear and convincing, we again observe that the hearing panel simply did not believe Hann's testimony and credited the testimony of Kuntz and Wahl as establishing that Hann had knowledge of the $36,000 at the outset of the case. There is evidence in the record that Hann advised Kuntz to get rid of the money or hide it, so as to not be considered in the court's division of property. Further, there is testimony that Kuntz acted on Hann's direction and withdrew the money, that Hann did not inform her legal assistant of the money, and that Hann did not take any action to correct the financial affidavit. We conclude there is clear and convincing evidence that Hann violated N.D.R. Prof. Conduct 8.4(c).

## VI

[¶ 37] Hann has requested this Court to find no violations of the North Dakota Rules of Professional Conduct and to dismiss this disciplinary action. However, we conclude that Hann violated N.D.R. Prof. Conduct 1.5(a), 1.15(a) and (c), 1.16(e), 3.3(a)(1) and (3), and 8.4(c). The hearing panel recommended that Hann be suspended from the practice of law for one year and that she pay the costs of the disciplinary proceedings in the amount of $7,010.76.

[¶ 38] In deciding the appropriate sanction, we are guided by the North Dakota Standards for Imposing Lawyer Sanctions, and we consider each disciplinary matter on its own facts. *Stensland*, 2011 ND 110, ¶ 20, 799 N.W.2d 341. In imposing a sanction, this Court considers: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." N.D. Stds. Imposing Lawyer Sanctions 3.0.

[¶ 39] In recommending a sanction, the hearing panel considered N.D. Stds. Imposing Lawyer Sanctions 4.12, providing "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client;" N.D. Stds. Imposing Lawyer Sanctions 5.11, providing "[d]isbarment is generally appropriate" when "a lawyer engages in serious conduct a necessary element of which includes intentional interference with the administration of justice, . . . misrepresentation, . . ." or "in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice;" N.D. Stds. Imposing Lawyer Sanctions 6.11, providing "[d]isbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding;" and N.D. Stds. Imposing Lawyer Sanctions 7.2, providing "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system."

The hearing panel also considered aggravating factors under N.D. Stds. Imposing Lawyer Sanctions 9.22(b), dishonest or selfish motive, (c) a pattern of misconduct, and (d) multiple offenses.

[¶ 40] Under this Court's standards for imposing discipline, we conclude suspension is the appropriate sanction for Hann's violations of the disciplinary rules. However, mitigation or mitigating circumstances "may justify a reduction in the degree of discipline to be imposed." N.D. Stds. Imposing Lawyer Sanctions 9.31. To the extent this Court's prior decision in *Richmond*, 501 N.W.2d 759, may have, but should not have, been relied upon for usage of nonrefundable retainer agreements under our Rules of Professional Conduct, we conclude a lesser sanction is appropriate. We therefore agree with the hearing panel that suspension is the appropriate sanction, but we believe that a suspension of six months and one day is appropriate under these circumstances.

### VII

[¶ 41] We order that Hann be suspended from the practice of law for a period of six months and one day, effective September 1, 2012. We further order that Hann pay $7,010.76 for the costs and expenses of the disciplinary proceeding, payable to the Secretary of the Disciplinary Board within 60 days. We further order that Hann must comply with N.D.R. Lawyer Discipl. 6.3 regarding notice, and any reinstatement is governed by N.D.R. Lawyer Discipl. 4.5.

[¶ 42] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.